No. 23-6995

# United States Court of Appeals for the Fourth Circuit

───────────────

SHEBRI STACY DILLON,
*Petitioner-Appellant*,

v.

CHADWICK DOTSON, VDOC
*Respondent-Appellee.*

───────────────

On Appeal from the
United States District Court for the Western District of Virginia,
No. 7:22-cv-215, Senior Judge James P. Jones

## BRIEF OF AMICUS CURIAE OF THE NATIONAL ASSOCIATION OF CRIMINAL DEFENSE LAWYERS, IN SUPPORT OF PETITIONER-APPELLANT

David B. Smith
Vice-Chair for the Fourth Circuit,
Amicus Committee
NATIONAL ASSOCIATION OF
CRIMINAL DEFENSE LAWYERS
David B. Smith, PLLC
108 N. Alfred Street
Alexandria, VA 22314

Lee R. Crain
*Counsel of Record*
Jordan Estes
Sam Raymond
Apratim Vidyarthi
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
(212) 351-2454
lcrain@gibsondunn.com

*Attorneys for Amicus Curiae The National Association of Criminal Defense Lawyers*
[additional counsel listed on inside cover]

Alexander Fischer
GIBSON, DUNN & CRUTCHER LLP
811 Main St. Ste. 3000
Houston, TX 77002

Samuel Learner
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036

Jesse Eaton-Luria
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center, #2600
San Francisco, CA 94111

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, the National Association of Criminal Defense Lawyers ("NACDL") certifies that it is a non-profit entity that does not have a parent corporation. No publicly held corporation owns 10 percent or more of any stake or stock in NACDL.

# TABLE OF CONTENTS

STATEMENT OF INTEREST ................................................................ 1

SUMMARY OF THE ARGUMENT ..................................................... 1

ARGUMENT ........................................................................................ 2

    I.    Effective Assistance Requires Proper Sentencing Advice, Without Which Defendants are Frequently Prejudiced ................................................................................... 2

        A.    Effective Assistance Requires that Counsel Provide Accurate Information about Sentencing Exposure. ....................................................................... 3

        B.    Inaccurate Advice on Sentencing Consequences After Trial Harms Criminal Defendants and Society. ....................................................................... 7

    II.    Cumulative Errors May Cause Prejudice ............................ 10

CONCLUSION .................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Baker v. United States*,
  109 F.4th 187 (3d Cir. 2024) ...........................................................5, 6

*Brady v. United States*,
  397 U.S. 742 (1970)...............................................................................3

*Carmichael v. United States*,
  659 F. App'x 1013 (11th Cir. 2016) ......................................................6

*Dillon v. Clarke*,
  No. 22-cv-215, ECF No. 23 (W.D. Va. Sept. 21, 2023) ..........................7

*Fisher v. Angelone*,
  163 F.3d 835 (4th Cir. 1998) ..............................................................11

*Fulton v. Graham*,
  802 F.3d 257 (2d Cir. 2015)...................................................................6

*Graham v. Florida*,
  560 U.S. 48 (2010)..................................................................................9

*Hammond v. United States*,
  528 F.2d 15 (4th Cir. 1975) ...................................................................4

*Harvey v. Commonwealth*,
  2023 WL 4710952 (Va. Ct. App. July 25, 2023) ....................................7

*Hedrick v. True*,
  443 F.3d 342 (4th Cir. 2006) ..............................................................11

*Holmes v. Johnson*,
  617 F. App'x 758 (9th Cir. 2015) ...........................................................6

*Kyles v. Whitley*,
  514 U.S. 419 (1995)........................................................................13, 15

*Lafler v. Cooper*,
  566 U.S. 156 (2012)............................................................3, 6

*Marvel v. United States*,
  380 U.S. 262 (1965)...............................................................5

*Mayfield v. United States*,
  955 F.3d 707 (8th Cir. 2020) ...............................................6

*Miller v. United States*,
  561 F. App'x 485 (6th Cir. 2014) ........................................5

*O'Tuel v. Osborne*,
  706 F.2d 498 (4th Cir. 1983) ...............................................4

*Ostrander v. Green*,
  46 F.3d 347 (4th Cir. 1995) ..........................................4, 7, 9

*Padilla v. Kentucky*,
  559 U.S. 356 (2010)...............................................................3

*Powell v. Alabama*,
  287 U.S. 45 (1932).............................................................11

*Santos Guzman Gonzalez v. Sessions*,
  894 F.3d 131 (4th Cir. 2018) ...............................................8

*Sawyer v. United States*,
  874 F.3d 276 (7th Cir. 2017) ...............................................6

*Strader v. Garrison*,
  611 F.2d 61 (4th Cir. 1979) .................................................4

*Strickland v. Washington*,
  466 U.S. 668 (1984)..................................................2, 10, 12

*United States v. Brown*,
  137 F.4th 248 (4th Cir. 2025)............................................15

*United States v. Garrett*,
  141 F.4th 96 (4th Cir. 2025)..............................................15

*United States v. Hunt*,
   123 F.4th 697 (4th Cir. 2024) ................................................................ 11

*United States v. Otano*,
   679 F. App'x 776 (11th Cir. 2017) ....................................................... 10

*United States v. Paylor*,
   88 F.4th 553 (4th Cir. 2023) ................................................................ 15

*United States v. Frazier*,
   971 F.2d 1076 (4th Cir. 1992) ................................................................ 8

*United States v. Kearn*,
   90 F.4th 1301 (10th Cir. 2024) ............................................................... 6

*United States v. Leon*,
   468 U.S. 897 (1984) .............................................................................. 14

*United States v. Marquez-Perez*,
   835 F.3d 153 (1st Cir. 2016) .................................................................. 6

*United States v. Mayhew*,
   995 F.3d 171 (4th Cir. 2021) ......................................................... 3, 4, 5

*United States v. Mikos*,
   539 F.3d 706 (7th Cir. 2008) .................................................................. 8

*United States v. Miller*,
   739 F. App'x 6 (D.C. Cir. 2018) ............................................................. 6

*United States v. Scribner*,
   832 F.3d 252 (5th Cir. 2016) .................................................................. 6

*United States v. Smagola*,
   390 F. App'x 438 (6th Cir. 2010) ........................................................... 5

*United States v. Woodall*,
   438 F.2d 1317 (5th Cir. 1970) ................................................................ 5

*United States v. Woodard*,
   748 F. App'x 498 (4th Cir. 2018) ........................................................... 4

*Wiggins v. Smith*,
539 U.S. 510 (2003)..................................................................13

*Williams v. Taylor*,
529 U.S. 362 (2000)..................................................................12

**STATUTES**

28 U.S.C. § 2254(d)(1) .................................................................6

U.S.S.G. § 3E1.1 ..........................................................................8

Va. Crim. Proc. § 19.2-295.1 (2019 West)....................................7

Va. Crim. Proc. § 19.2-298.01(A) ................................................7

**OTHER AUTHORITIES**

Candace McCoy, *Plea Bargaining as Coercion: The Trial Penalty and Plea Bargaining Reform* Crim. L.Q. 67 (2005).....................................8

Darryl K. Brown, *The Case for a Trial Fee: What Money Can Buy in Criminal Process*, 107 Cal. L. Rev. 1415, 1415 (2019).........................9

*Federal Judicial Caseload Statistics 2024*, https://bit.ly/4ozOQl2 ...........9

Irene Oritseweyinmi Joe, *Learning from Mistakes*, 80 Wash. & Lee L. Rev. 297, 344 (2023)..........................................................................10

John H. Blume, Christopher Seeds, *Reliability Matters: Reassociating Bagley Materiality, Strickland Prejudice, and Cumulative Harmless Error*, 95 J. Crim. L. & Criminology 1153, 1171 (2005) .....................14

NACDL, *The Trial Penalty*, http://bit.ly/4oDjIBg (last visited Aug. 14, 2025) .......................................................................................8

Vera Institute of Justice, *What Prosecution Costs*, http://bit.ly/4fz0R68 (last accessed Aug. 18, 2025); ....................................................9

## STATEMENT OF INTEREST[1]

Founded in 1958, NACDL is a non-profit, voluntary professional bar association working on behalf of criminal-defense attorneys to ensure justice and due process for those accused of crime or misconduct. It is recognized domestically and internationally for its expertise on criminal justice policies and best practices. Its nearly 40,000 members nationwide include private criminal defense lawyers, public defenders, active U.S. military defense counsel, and law professors.

NACDL has an interest in ensuring that parties like Petitioner are not denied their constitutional rights of effective assistance of counsel. NACDL also has an interest in ensuring that parties who *are* denied their constitutional rights have the chance to seek appropriate relief.

## SUMMARY OF THE ARGUMENT

The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel. Established federal law makes clear that when counsel provides objectively wrong advice on sentencing consequences, that "assistance" is definitionally and inherently

---

[1] No counsel for a party authored this brief in whole or in part, and no one except counsel for *amici* contributed money to fund the preparation or submission of this brief. All parties have consented to this filing.

ineffective. Clients rely on counsel to understand the relevant and accurate consequences of a guilty plea or trial. Failure to provide accurate information about sentencing exposure after trial, as Petitioner's counsel did here, undermines the Sixth Amendment and the policy considerations that encourage guilty pleas where appropriate.

This Court should affirm that objectively inaccurate advice as to sentencing consequences constitutes ineffective assistance of counsel, and should make clear that such assistance is deeply prejudicial to criminal defendants. The Court should also endorse, consistent with several Sister Circuits, a "cumulative error" approach. Under that approach, a collection of errors can, by itself, qualify as causing enough cumulative prejudice to warrant habeas relief.

## ARGUMENT

### I. Effective Assistance Requires Proper Sentencing Advice, Without Which Defendants are Frequently Prejudiced.

The Sixth Amendment guarantees defendants effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668 (1984). The Supreme Court, and this Court, have repeatedly held that when counsel incorrectly inform their clients of the consequences of a guilty plea, that constitutes ineffective assistance. In this case, Ms. Dillon's attorneys provided her

wholly incorrect advice. Ineffective assistance like that leads to immense negative effects on criminal defendants and, more broadly, to society.

## A. Effective Assistance Requires that Counsel Provide Accurate Information about Sentencing Exposure.

A defendant's "Sixth Amendment right to counsel" "extends to the plea-bargaining process." *Lafler v. Cooper*, 566 U.S. 156, 162 (2012). And the Supreme Court has confirmed that informing a defendant of "the advantages and disadvantages" of a guilty plea is a "critical obligation of counsel." *Padilla v. Kentucky*, 559 U.S. 356, 370 (2010). Federal law is clear: counsel provides effective assistance only if they give accurate advice as to the consequences of pleading guilty as opposed to going to trial. *Brady v. United States*, 397 U.S. 742, 755 (1970) (defendants must be aware of the "direct consequences" before pleading guilty); *United States v. Mayhew*, 995 F.3d 171, 178 (4th Cir. 2021) (recognizing that if counsel "in fact advised" the defendant, incorrectly, that "that he was certain to receive a sentence of between two and five years" if he proceeded to trial, instead of the 24-year sentence imposed, "then that gross error can" constitute "deficient performance.").

This Court has repeatedly recognized that inaccurate advice about the consequences of pleading guilty is presumptively ineffective, because

a reasonable defendant sitting in jail and facing a difficult decision that may subject him to many more years of the same could certainly be swayed by [a lawyer's] confident, though grossly uninformed, prediction that he would probably be breathing free air within days. Reasonable persons seek freedom from state restraint. If they do not, then the premise that imprisoning criminals deters crime is gravely flawed.

*Ostrander v. Green*, 46 F.3d 347, 356 (4th Cir. 1995), *overruled on other grounds by O'Dell v. Netherland*, 95 F.3d 1214 (4th Cir. 1996). This Court has thus held counsel is ineffective when she wrongly informs her client:

- That the sentence after trial will be less than five years in prison, *Mayhew*, 995 F.3d at 181 (causing client to reject plea, leading to evidentiary hearing and proceeding to trial);
- That a guilty plea *requires* cooperation, *United States v. Woodard*, 748 F. App'x 498, 500–01 (4th Cir. 2018) (causing client to reject plea);
- Of the maximum sentence for charged offenses, *Hammond v. United States*, 528 F.2d 15, 18-19 (4th Cir. 1975) (informed max penalty was 95, not 55 years, causing client to plead guilty);
- Of the parole eligibility date, *Strader v. Garrison*, 611 F.2d 61 (4th Cir. 1979) (incorrect advice a plea would not affect parole eligibility date, causing client to plead guilty); *O'Tuel v. Osborne*, 706 F.2d 498 (4th Cir. 1983) (reversing denial of habeas relief where client was wrongly told he would be parole eligible after 10, rather than 20 years, causing client to plead guilty); *Ostrander*, 46 F.3d at 349 (defendant wrongly told he was "guaranteed" to serve his sentence on work release, when in fact he was ineligible for work release and instead was sentenced to 12 years) (causing client to plead guilty).

This Court is not an outlier. Other Circuits have held it "well settled that a plea of guilty is invalid as not being understandingly entered if the defendant does not know the maximum possible penalty for the offense."

*United States v. Woodall*, 438 F.2d 1317, 1318 (5th Cir. 1970) (advice led to client pleading guilty) (citing *Marvel v. United States*, 380 U.S. 262 (1965)). The Sixth Circuit similarly stated that "it is well-established that for a defendant's plea of guilty to be voluntary, the defendant must be aware of the maximum sentence that could be imposed." *United States v. Smagola*, 390 F. App'x 438, 442 (6th Cir. 2010) (cleaned up) (finding clear error and harm where defendant pled guilty on erroneous information from court that defendant's max sentence was five years, not twenty).

Recognition of that principle explains why *every federal Court of Appeal*, including this one, *Mayhew*, 995 F.3d at 178, has recognized that counsel acts ineffectively where a defendant proceeds to trial based on incorrect advice about the potential sentence. For example, in a habeas proceeding, the Third Circuit remanded where defendant rejected a plea deal and went to trial only to discover counsel's "more than three-decade miscalculation of [defendant's] sentence." *Baker v. United States*, 109 F.4th 187, 196 (3d Cir. 2024). The Sixth Circuit similarly remanded where counsel failed to inform defendant that he faced a mandatory minimum sentence of 180 months if he lost at trial. *Miller v. United States*, 561 F. App'x 485, 493 (6th Cir. 2014). The Seventh Circuit

remanded where counsel advised defendant to reject a 15-year plea deal, and defendant was later sentenced to 50 years upon conviction at trial. *Sawyer v. United States*, 874 F.3d 276, 278 (7th Cir. 2017). The Tenth Circuit remanded where counsel's ineffective advice on a 10-year plea deal caused defendant to proceed to trial, where he received a 24-year sentence. *United States v. Kearn*, 90 F.4th 1301, 1309 (10th Cir. 2024). And in the Eleventh Circuit, the Court remanded where counsel's ineffective handling of ten- and twenty-year plea offers caused defendant to proceed to trial, where he was sentenced to a forty-year term. *Carmichael v. United States*, 659 F. App'x 1013, 1023 (11th Cir. 2016).[2]

The error in this case is exactly the type this Court and others have held reflects constitutionally deficient representation under "clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1); *see, e.g.*, *Lafler*, 566 U.S. at 172–73. Before her trial, Ms. Dillon's counsel advised her that the Virginia sentencing guidelines

---

[2] *Cf. United States v. Marquez-Perez*, 835 F.3d 153, 166 (1st Cir. 2016); *Fulton v. Graham*, 802 F.3d 257, 266 (2d Cir. 2015); *Baker v. United States*, 109 F.4th 187, 196 (3d Cir. 2024); *United States v. Scribner*, 832 F.3d 252, 254 (5th Cir. 2016); *Mayfield v. United States*, 955 F.3d 707, 710 (8th Cir. 2020); *Holmes v. Johnson*, 617 F. App'x 758, 764 (9th Cir. 2015); *United States v. Miller*, 739 F. App'x 6, 8 (D.C. Cir. 2018).

recommended a sentence ranging from one day to six months if found guilty at trial. *Dillon v. Clarke*, No. 22-cv-215, ECF No. 23 (W.D. Va. Sept. 21, 2023) ("Op."), at 35. He was wrong—the guidelines at the time would have applied only if Ms. Dillon pled guilty and was sentenced by a judge. Instead, if a defendant proceeded to trial, a *jury* recommended sentences, without being advised of any guidelines range. Va. Crim. Proc. § 19.2-295.1 (2019 West); *see also Harvey v. Commonwealth*, 2023 WL 4710952, at *1 (Va. Ct. App. July 25, 2023) (pre-2020 version of Va. Crim. Proc. § 19.2-295 had "automatic jury sentencing in criminal trials."); Va. Crim. Proc. § 19.2-298.01(A) ("In cases tried by a jury, the jury shall not be presented any information regarding sentencing guidelines."). These provisions were "very simple," and even a cursory review would have confirmed counsel's advice as wrong. *Ostrander*, 46 F.3d at 350. Based on this plainly incorrect advice, Ms. Dillon kept her not-guilty plea, went to trial, and was sentenced by a jury to 39 years—between *78 and 14,235 times longer than what her attorney advised* she would receive. Both Ms. Dillon's trial and appellate counsel have since been disbarred.

## B.    Inaccurate Advice on Sentencing Consequences After Trial Harms Criminal Defendants and Society.

Inaccurate advice regarding sentencing is deeply prejudicial to

defendants and to society. Misadvice may lead a defendant to go to trial, either because of a lack of trust in counsel's advice or because of counsel's active misadvice about the consequences of a guilty plea. The costs to defendants and society are significant in four respects.

*First,* criminal defendants and society benefit from defendants who plead guilty and demonstrate remorse for their crimes. As this Court has explained, there is a "societal interest in the reduction of crime, restitution, early withdrawal from criminal activity, . . . and the increased potential for rehabilitation among those who feel and show true remorse." *United States v. Frazier*, 971 F.2d 1076, 1085 (4th Cir. 1992).[3] Courts should reward true remorse with lower sentences. *Accord* U.S.S.G. § 3E1.1 (reductions in Sentencing Guidelines for acceptance of responsibility). But if a defendant does not trust counsel to give accurate

---

[3] NACDL, *The Trial Penalty*, http://bit.ly/4oDjIBg (last visited Aug. 14, 2025) ("At the federal level, trial sentences are roughly three times higher than plea sentences for the same crime on average and sometimes as much as eight or ten times higher."); Candace McCoy, *Plea Bargaining as Coercion: The Trial Penalty and Plea Bargaining Reform*, 50 Crim. L.Q. 67 (2005) (assessing trial penalty magnitude); *Santos Guzman Gonzalez v. Sessions*, 894 F.3d 131, 140 (4th Cir. 2018) (guilty plea reflects some "degree of culpability"); *United States v. Mikos*, 539 F.3d 706, 718 (7th Cir. 2008).

advice, or the counsel actively misadvises, the defendant may choose not to plead guilty, as with Ms. Dillon. That forfeits the societal benefits of a guilty plea reflecting remorse and miscalibrates the defendant's resulting sentence on the presumption that the defendant is not remorseful.

*Second*, trials place substantial financial burdens on defendants and the state fisc, and burden courts, which are already overburdened and understaffed. For that reason, advice that results in an increase in needless trials burdens society and judicial economy.[4]

*Third*, misadvice, and proceeding to trial, leads to sentences that do not reflect key penological goals like deterrence and incapacitation. *See Graham v. Florida*, 560 U.S. 48, 72 (2010).

- ***Deterrence***: "[S]tate restraint . . . deters crime." *Ostrander*, 46 F.3d at 356. Reasonable people will avoid that restraint based on the amount of time they expect to serve. But misadvice about the potential sentences resulting from going to trial will reduce the deterrent effect of relevant sentences, since defendants going to trial may face harsher sentences than they were told to expect,

---

[4] *See* Darryl K. Brown, *The Case for a Trial Fee: What Money Can Buy in Criminal Process*, 107 Cal. L. Rev. 1415, 1415 (2019) (noting costs of trial to criminal defendants); Vera Institute of Justice, *What Prosecution Costs*, http://bit.ly/4fz0R68 (last accessed Aug. 18, 2025); *Federal Judicial Caseload Statistics 2024*, https://bit.ly/4ozOQl2 ("[F]ilings in the U.S. district courts for civil cases and criminal defendants increased by 60,856 (up 17 percent) to 414,026. Terminations fell by 41,827 (down 10 percent) to 370,225. . . . the total . . . rose by 44,144 (up 6 percent) to 746,577.").

increasing the perceived randomness of criminal sentencing and reducing the deterrent effect of the actual criminal sentence.

- **Incapacitation**: Incapacitating defendants protects the public from "further crimes." *United States v. Otano*, 679 F. App'x 776, 779 (11th Cir. 2017). Defendants wrongly advised of their potential sentences may choose to go to trial—where they could win—rather than plead guilty, which would guarantee their incapacitation. Misadvice decreases the chance of warranted incapacitation.

*Fourth*, without appropriate relief in such cases, courts fail to appropriately penalize counsel who provide consequential misadvice. Attorneys who provide such advice will harm future defendants if courts do not correct this behavior and deem the counsel's acts ineffective.[5] Absent such consequences and this Court's clear warning, other counsel providing such advice may not be corrected, perpetuating the harm from their ineffective assistance. This harm will disproportionately affect low-income and indigent clients who are wholly reliant on public defenders, who unlike private counsel, are not governed by the market.

## II. Cumulative Errors May Cause Prejudice.

To justify habeas relief for ineffective assistance, a petitioner must demonstrate ineffective assistance and prejudice. *Strickland*, 466 U.S. at

---

[5] *See generally* Irene Oritseweyinmi Joe, *Learning from Mistakes*, 80 Wash. & Lee L. Rev. 297, 344 (2023).

687. In the district court, Ms. Dillon argued her counsel made eighteen significant errors that prejudiced her, taken both individually and collectively. Op. at 9–11. But the District Court decided that each alleged error needed to be assessed individually. *Id.* at 52 (citing *Fisher v. Angelone*, 163 F.3d 835, 852 (4th Cir. 1998)).

*Fisher* does not constrain this Court. First, the Court may rule contrary to *Fisher* so long as "contrary law from an en banc or Supreme Court decision" exists. *United States v. Hunt*, 123 F.4th 697, 702 (4th Cir. 2024), *cert. denied*, 2025 WL 1549804 (U.S. June 2, 2025). Second, even if multiple instances of nondeficient assistance cannot cumulatively constitute deficient assistance (as the Court held in *Fisher*), the collective effect of multiple instances of constitutionally ineffective assistance *can* collectively amount to sufficient prejudice. *See Hedrick v. True*, 443 F.3d 342, 359, 359 n.11 (4th Cir. 2006) (considering the alleged deficiencies "as a whole" to determine whether there arose "prejudice from their collective effect," and noting that an ineffective-assistance claim "inherently contemplates the totality of counsel's performance").

The Supreme Court has for nearly a century endorsed cumulative prejudice tests. In *Powell v. Alabama*, 287 U.S. 45 (1932), three black

teenagers were sentenced to death for the rape of two white women in a small Alabama town. The trial court considered several facts cumulatively about the defendants: (1) their "ignorance and illiteracy"; (2) their age; (3) "public hostility"; (4) "imprisonment and the close surveillance . . . by the military forces"; (5) that communication with their friends and families, all in other states, was difficult; and, (6) "that they stood in deadly peril of their lives." *Id.* at 71. The Court endorsed the cumulative approach and reversed the convictions. *Id.*

The Court later announced in *Strickland* that a defendant incurs prejudice warranting a new trial when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694. To determine the probability, "a court hearing an ineffectiveness claim must consider the *totality of the evidence* before the judge or jury." *Id.* at 695 (emphasis added).

This trend continued (after this Court's decision in *Fisher*) in *Williams v. Taylor*, 529 U.S. 362 (2000). There, the Court held that the trial judge correctly examined "the entire postconviction record, viewed as a whole and cumulative of mitigation evidence presented originally," to determine whether counsel had been ineffective. *Id.* at 399. Then three

years later in *Wiggins v. Smith*, 539 U.S. 510 (2003), the Court "evaluate[d] the totality of the evidence" because "[i]n assessing prejudice" during the penalty phase, it is proper to "reweigh the evidence in aggravation against the totality of available mitigating evidence," taken "as a whole." *Id.* at 534, 536.

The Court's reliance on totality tests over isolation tests goes beyond ineffective assistance. For example, the Court held that prejudice from erroneous exclusion of multiple items of defense evidence must be "considered collectively, not item by item," assessing their "net effect" on the outcome. *Kyles v. Whitley*, 514 U.S. 419, 436–37 (1995). In *Kyles*, the Court held that confidence in the jury's verdict could not "survive a recap" of *all* the exclusions, considered cumulatively. *Id.* at 453.

It makes good sense that prejudice is assessed cumulatively. Without a cumulative-error approach, defense attorneys may not provide adequate counsel to indigent defendants. If assistance can be ineffective only if a single isolated error results in an adverse outcome, the incentive to provide consistently adequate counsel throughout a representation— which can last years—decreases. Similarly, as here, in complicated cases, multiple small errors are likely to compound and produce absurd results.

- 13 -

The stakes are not just high for individual defendants but for society and the criminal justice system. A cumulative-prejudice rule preserves the criminal trial as a means for discovering the entire truth, which can only be discerned by examining *everything* that happened. *See United States v. Leon*, 468 U.S. 897, 900–01 (1984) (recognizing general goal of establishing "procedures under which criminal defendants are 'acquitted or convicted on the basis of *all* the evidence which exposes the truth.'") (citation omitted) (emphasis added). Failure to examine the full record and the cumulative effect of multiple counsel errors undermines the adversarial system and the truth-finding function of a criminal trial.

The individual-error approach also invites arbitrary application. Focusing on each alleged deficiency in isolation rests the result on "claim[-]definition and semantics," and "thereby fail to measure the overall reliability of the trial."[6] Commentators have explained why: "consider a failure by defense counsel to investigate and present multiple mitigating aspects of a defendant's background in a capital sentencing

---

[6] John H. Blume, Christopher Seeds, *Reliability Matters: Reassociating Bagley Materiality, Strickland Prejudice, and Cumulative Harmless Error*, 95 J. Crim. L. & Criminology 1153, 1171 (2005)

proceeding. Is this a single error or many?"[7]

Last—to the extent a cumulative-prejudice rule is more defendant-friendly than prosecution-friendly in close cases, "[t]his is as it should be." *Kyles*, 514 U.S. at 439. Procedural rules that give defendants, like Ms. Dillon, the tiebreaker when a question is close maintain society's trust in the law and the courts. As the Supreme Court has explained, a rule that favors defendants on the margins "serve[s] to justify trust in the prosecutor as the representative of a sovereignty whose interest in a criminal prosecution is not that it shall win a case, but that justice shall be done." *Id.* (citations and quotations omitted).

## CONCLUSION

This Court has recently enforced the Great Writ to remedy acts undermining criminal defendants' constitutional rights.[8] Ms. Dillon's counsel's deficient performance did just that. This Court should reverse.

---

[7] *Id.* at 1171–72.

[8] *United States v. Paylor*, 88 F.4th 553 (4th Cir. 2023); *United States v. Garrett*, 141 F.4th 96 (4th Cir. 2025); *United States v. Brown*, 137 F.4th 248 (4th Cir. 2025).

Dated: August 19, 2025                    Respectfully submitted,


*/s/ David B. Smith*                      */s/ Lee R. Crain*
David B. Smith                            Lee R. Crain
Vice-Chair for the Fourth Circuit,        Jordan Estes
Amicus Committee                          Sam Raymond
NATIONAL ASSOCIATION OF CRIMINAL          Apratim Vidyarthi
DEFENSE LAWYERS                           GIBSON, DUNN & CRUTCHER LLP
David B. Smith, PLLC                      200 Park Avenue
108 N. Alfred Street                      New York, NY 10166
Alexandria, VA 22314                      (212) 351-2454
                                          lcrain@gibsondunn.com

                                          Alexander Fischer
                                          GIBSON, DUNN & CRUTCHER LLP
                                          811 Main St. Ste. 3000
                                          Houston, TX 77002

                                          Samuel Learner
                                          GIBSON, DUNN & CRUTCHER LLP
                                          1700 M Street, N.W.
                                          Washington, D.C. 20036

                                          Jesse Eaton-Luria
                                          GIBSON, DUNN & CRUTCHER LLP
                                          One Embarcadero Center, #2600
                                          San Francisco, CA 94111

*Attorneys for Amicus Curiae The National Association of Criminal Defense Lawyers.*

- 16 -

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g)(1), I certify that this brief complies with the applicable typeface, type style, and type-volume limitations. This brief complies with Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6) because it was prepared using a proportionally spaced type (New Century Schoolbook, 14 point). Exclusive of the portions exempted by Federal Rule of Appellate Procedure 32(f) and Fourth Circuit Rule 32(b), this brief contains 3,270 words. This certificate was prepared in reliance on the word-count function of the Microsoft Word for Microsoft 365 software used to prepare this brief.

August 19, 2025                      Respectfully submitted,

                                     */s/  Lee R. Crain*
                                     Lee R. Crain
                                     Gibson, Dunn, & Crutcher LLP
                                     200 Park Avenue
                                     New York, NY 10166
                                     (212) 351-2454
                                     lcrain@gibsondunn.com

## CERTIFICATE OF SERVICE

I hereby certify that, on August 19, 2025, I electronically filed the foregoing brief with the Clerk for the United States Court of Appeals for the Fourth Circuit using the appellate CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

August 19, 2025                    Respectfully submitted,

                                   */s/ Lee R. Crain*
                                   Lee R. Crain
                                   Gibson, Dunn, & Crutcher LLP
                                   200 Park Avenue
                                   New York, NY 10166
                                   (212) 351-2454
                                   lcrain@gibsondunn.com