**Record No. 23-6995**

**In the United States Court of Appeals**
**For the Fourth Circuit**

**SHEBRI STACY DILLON,**

*Petitioner – Appellant,*

v.

**JOSEPH WALTERS,**
**Director, Virginia Department of Corrections,**

*Respondent – Appellee.*

**On Appeal from the United States District Court**
**for the Western District of Virginia**

# RESPONSE BRIEF OF THE APPELLEE


JAY JONES
Attorney General of Virginia

JAE K. DAVENPORT
DEPUTY ATTORNEY GENERAL

CRAIG W. STALLARD
Virginia State Bar No. 43227
Senior Assistant Attorney General
cstallard@oag.state.va.us
oagcriminallitigation@oag.state.va.us

*Counsel of Record*

OFFICE OF THE ATTORNEY GENERAL
202 North Ninth Street
Richmond, Virginia 23219
Telephone: (804) 786-5390
Facsimile: (804) 371-0151

*Counsel for Appellee*


October 8, 2026

# TABLE OF CONTENTS

Page


TABLE OF AUTHORITIES ........ iii

STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION ..... 1

INTRODUCTION ........ 1

ISSUES PRESENTED FOR REVIEW ........ 4

STATEMENT OF THE CASE ........ 5

A. Dillon steals all of Thompson's money and possessions while Thompson is in jail. ........ 5

B. Dillon consults with her trial counsel and elects to go to trial and is convicted of 10 charges at trial. ........ 8

C. Dillon receives a 30-year aggregate sentence. ........ 9

D. Dillon unsuccessfully challenges her convictions on direct appeal and in state habeas. ........ 12

E. The district court denies Dillon's § 2254 petition without a hearing. ........ 13

SUMMARY OF ARGUMENT ........ 15

STANDARDS OF REVIEW ........ 16

ARGUMENT ........ 17

A. Trial counsel was not ineffective for not moving to strike the credit-card fraud charge. ........ 17

B. Counsel was not deficient because a motion to strike would have been meritless. ........ 19

C. Dillon did not establish prejudice from the lack of a motion to strike. ........ 22

1. Even if such a motion were meritorious, the Commonwealth simply would have amended the charge to capture her obviously criminal conduct. ....................22

2. Even if Dillon had established ineffective assistance as to the credit-card-fraud charge, the District Court did not err by applying the concurrent-sentencing doctrine. ....................29

D. The state habeas court did not unreasonably dispose of Dillon's *Lafler*/*Frye* claim, and the District Court did not abuse its discretion by not holding an evidentiary hearing. ....................34

CONCLUSION ....................46

CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a) ....................47

CERTIFICATE OF SERVICE ....................48

# TABLE OF AUTHORITIES

Page

CASES

*Anaya v. Lumpkin*,
976 F.3d 545 (5th Cir. 2020)............................................................. 43, 44

*Barnes v. United States*,
412 U.S. 837 (1973)..........................................................................30

*Brown v. Davenport*,
596 U.S. 118 (2022)..........................................................................17

*Burket v. Angelone*,
208 F.3d 172 (4th Cir. 2000)..............................................................17

*Burt v. Titlow*,
571 U.S. 12 (2013)...................................................................... 16, 18

*Carter v. Hopkins*,
151 F.3d at 872 (8th Cir. 1998)..........................................................19

*Commonwealth v. Bass*,
786 S.E.2d 165 (Va. 2016).................................................................23

*Crockett v. Clarke*,
35 F.4th 231 (4th Cir. 2022) ................................................ 16, 34, 36, 37

*Cullen v. Pinholster*,
563 U.S. 170 (2011)..................................................................... 18, 35

*Dillon v. Commonwealth*,
No. 1375-16-3, 2017 Va. App. LEXIS 252 (Va. Ct. App. Oct. 10, 2017)
(unpublished), *reh'g en banc denied* (Nov. 8, 2017)...................................12

*Duka v. United States*,
27 F.4th 189 (3d Cir. 2022)................................................................30

*Gardner v. Warden Lewisburg USP*,
845 F.3d 99 (3d Cir. 2017).................................................................30

*Gomez v. Commonwealth*,
843 S.E.2d 379 (Va. App. 2020)..........................................................23

*Griggs v. Maryland*,
263 F.3d 355 (4th Cir. 2001)...................................................... 4, 19, 28

*Harrington v. Richter*,
562 U.S. 86 (2011) ........................ 17, 18, 19, 25

*Jones v. Zimmerman,*
805 F.2d 1125 (3d Cir. 1986) ........................ 30

*Kanu v. Commonwealth*,
Record No. 1729-19-4, 2020 Va. App. Lexis 287 (Va. App. Nov. 24, 2020).... 22

*Kimmelman v. Morrison*,
477 U.S. 365, 374 (1986) ........................ 17

*Klein v. Martin*,
607 U.S. 213 (2026) (per curiam) ........................ 35

*Lafler v. Cooper*,
566 U.S. 156 (2012) ........................ 39, 41, 42

*Laster v. Russell*,
743 S.E.2d 272 (Va. 2013) ........................ 42, 43

*Lockyer v. Andrade*,
538 U.S. 63 (2003) ........................ 35

*Marshall v. Rodgers*, 569 U.S. 58 (2013) ........................ 35

*Martinez v. Ryan*,
566 U.S. 1 (2012) ........................ 14

*Masoner v. Thurman*,
996 F.2d 1003 (9th Cir. 1993) ........................ 20

*Mays v. Hines*,
592 U.S. 385 (2021) (per curiam) ........................ 35

*McCarthy v. Hernandez*,
608 U.S. 809 (2026) (per curiam) ........................ 16

*Merzbacher v. Shearin*,
706 F.3d 356 (4th Cir. 2013) ........................ 42

*Missouri v. Frye*,
566 U.S. 134 (2012) ........................ 39

*Montana v. Hall*,
481 U.S. 400 (1987) ........................ 24

*Moody v. Polk*,
408 F.3d 141 (4th Cir. 2005)....................................................................20

*Parker v. Matthews*,
567 U.S. 37 (2012)....................................................................................35

*Purvy v. Commonwealth*,
717 S.E.2d 847 (Va. 2011).........................................................................24

*Rawls v. Commonwealth,*
683 S.E.2d 544 (Va. 2009)................................................................. 29, 33

*Ray v. United States*,
481 U.S. 736 (1987) (per curiam)..............................................................32

*Saponaro v. Commonwealth*,
655 S.E.2d 49 (Va. Ct. App. 2008) ........................................................2, 24

*Schriro v. Landrigan*,
550 U.S. 465 (2007)...................................................................................36

*Shinn v. Kayer*,
592 U.S. 111 (2020) (per curiam)..............................................................35

*Sigmon v. Stirling*,
956 F.3d 183 (4th Cir. 2020)......................................................................36

*Spencer v. Murray*,
18 F.3d 229 (4th Cir. 1994)........................................................................19

*Stamper v. Commonwealth*,
324 S.E.2d 682 (Va. 1985).........................................................................23

*Strickland v. Washington*,
566 U.S. 668 (1984)........................................................................... passim

*United States v. Berardi*,
675 F.2d 894 (1982)...................................................................................21

*United States v. Bethea*,
483 F.2d 1024 (4th Cir. 1973)............................................................ 20, 26

*United States v. Bey*,
736 F.2d 891 (3d Cir. 1984).......................................................................30

*United States v. Charles,*
932 F.3d 153 (4th Cir. 2019)......................................................................14

*United States v. Flood*,
2026 U.S. App. LEXIS 24462 (4th Cir. Aug. 13, 2026) ....................................42

*United States v. Grimes*,
641 F.2d 96 (3d Cir. 1981)....................................................................................30

*United States v. Lampley*,
573 F.2d 783 (3d Cir. 1978)..................................................................................30

*United States v. Linder*,
561 F.3d 344 (4th Cir. 2009)..................................................................................19

*United States v. Mathis*,
579 F.2d 415 (7th Cir. 1978)..................................................................................21

*United States v. McKie*,
112 F.3d 626 (3d Cir. 1997)............................................................................ 29, 32

*United States v. Powell*,
469 U.S. 57 (1984) ..................................................................................................22

*United States v. Ross*,
801 F.3d 374 (3d Cir. 2015)............................................................................ 30, 31

*United States v. Truong Dinh Hung*,
629 F.2d 908 (4th Cir. 1980)..................................................................................29

*United States v. Tucker*,
404 U.S. 443 (1972) ................................................................................................26

*United States v. Williams*,
89 F.3d 165 (4th Cir. 1996)....................................................................................21

*Virginia v. LeBlanc*,
582 U.S. 91 (2017) ..................................................................................................35

*West v. Director, Dep't of Corr.*,
639 S.E.2d 190 (Va. 2007)......................................................................................40

*Wiggins v. Smith*,
539 U.S. 510 (2003) ................................................................................................37

*Williams (Terry) v. Taylor*,
529 U.S. 362 (2000) ................................................................................................34

*Wood v. Allen*,
558 U.S. 290 (2010) ................................................................................................44

*Woodard v. Commonwealth*,
754 S.E.2d 309 (Va. 2014) .......... 33, 40

*Yarborough v. Gentry*,
540 U.S. 1 (2003) .......... 18

STATUTES

28 U.S.C. § 1291, United States Code .......... 1

28 U.S.C. § 2253, United States Code .......... 1

28 U.S.C. § 2254, United States Code .......... 1

28 U.S.C. § 2254(d), United States Code .......... 34, 43

28 U.S.C. § 2254(d)(1), United States Code .......... 34

28 U.S.C. § 2254(d)(2), United States Code .......... 36

28 U.S.C. § 2254(e)(1), United States Code .......... 36, 37, 41

Section 18.2-95 (2017), Code of Virginia .......... 24

Section 19.2-227, Code of Virginia .......... 23, 28

Section 19.2-231, Code of Virginia .......... 15, 23, 28

Section 19.2-293, Code of Virginia .......... 24

OTHER AUTHORITIES

Charles E. Torcia,
Wharton's Criminal Law § 58 (15th ed. 1993) .......... 25

RULES

Rule 3A:8, Rules of the Supreme Court of Virginia .......... 42

Rule 3A:8(c)(2), Rules of the Supreme Court of Virginia .......... 42

Rule 3A:9(b)(2), Rules of the Supreme Court of Virginia .......... 23

## STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

Shebri Dillon filed a habeas corpus petition in the district court pursuant to 28 U.S.C. § 2254. (JA 4-102). The court entered its final judgment order and memorandum opinion dismissing the petition on September 21, 2023. (JA 1154-1205). Dillon timely noted her appeal before October 3, 2023. (JA 1207). This Court has appellate jurisdiction to review the judgment of the district court under 28 U.S.C. § 1291 and 28 U.S.C. § 2253.

## INTRODUCTION

In February 2013, Dillon and her children moved into the home of Warren Thompson, Jr., in Roanoke County, Virginia. (JA 479-80). About a year later, Thompson was arrested and Dillon promised to care for his home and belongings while he was incarcerated and to send him money from his bank accounts. (JA 481-82, JA 495, JA 502). Dillon stopped sending him money after a month. (JA 482-83).

Dillon then fraudulently had the title and deed to Thompson's home transferred to her. (JA 441-44, JA 455-57). Dillon ultimately sold Thompson's house, car, and his belongings, withdrew all the money from his bank accounts with Thompson's debit card, and used the card as a credit card to purchase items for herself. (JA 464, JA 476-77, JA 545-52, JA 560-63, JA 603-05, JA 614-17, JA 688-89, JA 699). Dillon kept all of the money from the sale of Thompson's belongings

and the funds she withdrew from the accounts, other than the money she sent him for a month and a few bills that were paid. (JA 547).

A jury convicted Dillon of multiple charges related to her theft of Thompson's possessions including embezzlement, credit-card fraud, grand larceny, obtaining money by false pretenses, and money laundering. (JA 773-83). The trial court ran Dillon's one-year sentences for embezzlement and credit-card fraud concurrently with the 30-year sentence she received for grand larceny, obtaining money by false pretenses, and money laundering. (JA 353-56). Dillon's direct appeals, state habeas, and federal district court habeas were unsuccessful. (JA 293-320, JA 325, JA 1092-97, JA 1098, JA 1106, JA 1154-1205, JA 1206).

This Court has granted two issues for review. (ECF 16, 60). The first issue is whether, in light of *Saponaro v. Commonwealth*, 655 S.E.2d 49 (Va. Ct. App. 2008), trial counsel rendered ineffective assistance by failing to move to strike Dillon's credit-card fraud charge. (ECF 16). *Saponaro* held that lawful possession of a misused credit card constitutes embezzlement while wrongful possession of a misused card constitutes credit-card fraud. *See Saponaro*, 655 S.E.2d at 51. Dillon argued in federal habeas that her counsel should have moved to strike her credit-card fraud charge because she lawfully possessed Thompson's debit card. (JA 182). The district court did not err in applying the concurrent sentence rule and denying habeas relief since

success would not have changed the 30-year sentence Dillon is serving. (JA 1202). But even without the concurrent sentence rule, Dillon has not met her burden to establish prejudice under *Strickland v. Washington*, 566 U.S. 668 (1984), as the Commonwealth would have been permitted to amend the charge to embezzlement due to a fatal variance.

The second issue is whether the district court erred by rejecting, without an evidentiary hearing, Dillon's claim that trial counsel rendered ineffective assistance by misadvising her about her sentencing exposure if she went to trial rather than take a plea. (ECF 60). The district court correctly applied AEDPA deference and found that the state habeas court's rejection of this claim was not based on an unreasonable interpretation of the facts. (JA 266, JA 1003). Dillon has not shown by clear and convincing evidence that the state habeas court unreasonably found Dillon's claim that she would have pled guilty not credible. Notably, Dillon submitted an exhibit in state habeas that showed that counsel explained to Dillon the potential sentencing exposure of spending the rest of her life in jail if she were to go to trial and she rejected any offer to plead guilty. (JA 266, JA 1003). Thus, to the extent Dillon raises a claim that she was misadvised about a plea deal, her own document contradicts it. Accordingly, the district court did not abuse its discretion in deciding this issue without an evidentiary hearing.

# ISSUES PRESENTED FOR REVIEW

After the district court dismissed Dillon's federal habeas petition, this Court granted review on two issues.

I. Whether the district court erred in dismissing Dillon's claim that trial counsel was ineffective in not moving to strike the credit-card fraud charge, and whether the concurrent sentencing rule precludes habeas relief when the length of Dillon's sentence would be unaffected.

II. Whether the district court erred when it denied, without an evidentiary hearing, Dillon's claim that trial counsel was ineffective in not advising her of her sentencing exposure at trial, or whether the district court properly found that the state habeas court's decision on this claim was not unreasonable.

Dillon's opening brief additionally claims that counsel was ineffective for improperly advising Dillon of her right to testify; counsel was ineffective during the sentencing hearing; and counsel's cumulative errors affected the outcome of the trial. (ECF 40 at 48-59). Dillon has also attempted to expand the issues to include a review of her embezzlement charge and is seeking a resentencing on all of her convictions. This Court has held: "When habeas petitioners raise arguments outside the certificate of appealability, we routinely refuse to consider them." *Griggs v. Maryland*, 263 F.3d 355, 359 n.2 (4th Cir. 2001). The respondent therefore will not address Dillon's additional arguments.

## STATEMENT OF THE CASE

### A. Dillon steals all of Thompson's money and possessions while Thompson is in jail.

In February 2013, Thompson allowed Dillon and her four children to move in with him. (JA 479-80). Thompson had inherited the home a year and a half earlier when his father had passed away. (JA 478). Thompson mainly slept on the couch or in a chair in the living room while Dillon and her boyfriend slept in one of the bedrooms, Dillon's daughter slept in another bedroom, and Dillon's three sons slept in the third bedroom. (JA 479-80).

One year later, on February 4, 2014, Thompson was arrested on an unrelated charge. (JA 479, JA 492). In a recorded phone conversation on February 7, 2014, Thompson asked Dillon to pay the electric bill, the cable bill, and the car insurance while he was in jail. (JA 481, JA 495, JA 502). Dillon was authorized to use his card to take care of certain expenses, such as "Ntelos and Netflix," and had authority to "take care of the bills" such as paying the electric bill, the car, the car insurance, and Cox Cable. (JA 481, JA 491).

Dillon agreed to pay the bills and also agreed to transfer money from Thompson's bank account to his jail account. (JA 482). Dillon had Thompson's bank password and PIN number. (JA 482, JA 488-89, JA 502). Thompson did not authorize Dillon to use the funds in his bank account for herself. (JA 482, JA 492).

During the first month that Thompson was incarcerated, Dillon made several transfers of funds from Thompson's bank account to his account at the jail. (JA 491, JA 576-77). But Dillon also made unauthorized purchases and withdrawals—including a $255.29 credit card purchase from Mary Kay cosmetics and five separate $500 cash withdrawals. (JA 492). At some point, Thompson discovered that the amount of money in his jail account was significantly less than he was expecting. (JA 482). When Thompson called Dillon and asked why she had not transferred more money into his jail account, she told him that the funds for the transfer were not readily available. (JA 482). After that phone conversation, Dillon stopped answering Thompson's calls. (JA 482-83).

About a week after Thompson's arrest, the mother of Dillon's boyfriend, Linda Young, met Dillon at Thompson's house. (JA 440-44). Young was a notary public. (JA 440). Dillon presented Young with two separate documents for her to notarize: a "power of attorney" appointing Dillon as Thompson's general power of attorney, and a "deed of gift" transferring Thompson's home into Dillon's name. (JA 441-44, JA 446, JA 681-83). Dillon signed Thompson's name on both documents, and Young notarized the signatures. (JA 442-43). Because Thompson was incarcerated at the time, both documents were backdated to January 4, 2014, in order to make it appear that

Thompson had signed the documents before his arrest. (JA 444, JA 446, JA 685, JA 687).

On February 24, 2014, Dillon went to the Roanoke County Circuit Court clerk's office and registered the deed of gift, which required her to pay a small fee as the new owner of Thompson's home. (JA 455-57, JA 684-86). On February 27, 2014, Dillon gifted Thompson's 2003 Mitsubishi Eclipse to herself by signing Thompson's name and her own name as Thompson's "POA" on the certificate of title. (JA 462-63, JA 488, JA 691-92). The same day, Dillon registered the vehicle at the Department of Motor Vehicles by presenting the certificate of title. (JA 466-67, JA 503, JA 691). On April 24, 2014, Dillon sold the vehicle to a company called Auto Mart for $2,200. (JA 464, JA 476-77, JA 699). Thompson had paid between $6,000 and $7,000 dollars for the vehicle when he had purchased it three months earlier, and he had spent an additional $1,500 on a sound system from Best Buy. (JA 480).

In July of 2014, Dillon sold Thompson's home for $40,000. (JA 545-52, JA 688-89). The proceeds of the sale were wired directly to Dillon's bank account. (JA 547). The tax-assessed value of the home was close to $100,000. (JA 688-89). Before the sale closed, Dillon removed everything of value from the home. (JA 560-63, JA 603-05, JA 614-17).

In June 2015, a grand jury sitting in Roanoke County, Virginia returned 15 indictments charging Dillon with embezzlement, forgery, grand larceny, larceny of a firearm, three counts of uttering, use of a forged certificate of title, obtain certificate of title using forged documents, three counts of perjury, credit-card fraud, obtain money by false pretenses, and money laundering.

**B. Dillon consults with her trial counsel and elects to go to trial and is convicted of 10 charges at trial.**

At Dillon's trial in the Roanoke County Circuit Court, Thompson testified that he had left everything he owned in his home when he was arrested, including his wallet, kitchen appliances, the living room suite, his master bedroom suite, his aunt's bedroom suite, his deceased father's ashes, his grandfather's flag and a hat from World War II, two gaming laptops, a subwoofer, two leather couches, a photo family album, the family Bible, tools, wrenches, compressors, welders, buffers, clothes, firearms and ammunition. (JA 483-84). Thompson testified that he did not give Dillon permission to sell or give away any of his property. (JA 486). But when Thompson was released eleven months after his arrest, all of his possessions were gone. (JA 486). And none of them had been recovered by the time of Dillon's trial. (JA 486).

In closing arguments, the Commonwealth argued to the jury that the embezzlement charge was a result of Dillon taking money from Thompson's bank accounts beyond her authorization to pay Thompson's bills and send money to him

while he was in jail. (JA 642). The Commonwealth pointed the jury to Thompson's bank records after he was arrested and specifically to transactions that occurred in Roanoke County. (JA 642). The Commonwealth also informed the jury, as did the jury instructions, that when Dillon converted Thompson's money for her own use beyond the authority she was given, that was embezzlement. (JA 642).

For the credit-card fraud, the Commonwealth referred the jury to Thompson's bank records and a transaction on March 10 showing a charge from Mary Kay, a makeup store, for about $255. (JA 492, JA 643). Based on the transaction, the Commonwealth argued that this transaction was done with Thompson's credit card, because there was no PIN number used. (JA 492, JA 643).

The jury convicted Dillon of multiple charges related to her theft of Thompson's possessions including embezzlement, credit-card fraud, grand larceny, obtaining money by false pretenses, and money laundering. (JA 773-83).

Dillon moved to set aside the verdicts, complaining about limits on cross-examination, challenging the handwriting expert's testimony, and challenging the credibility of the witnesses. (JA 906-43). The trial court denied the motions.

**C. Dillon receives a 30-year aggregate sentence.**

Following the jury's finding of guilt, the trial court held a hearing for the jury to consider evidence in order to recommend a sentence. (JA 664). The court

instructed the jury that sentences were normally run consecutively, but that the court could run sentences concurrently and that the jury could recommend concurrent sentences. (JA 679).

On the conviction for embezzlement, the Commonwealth recommended the jury impose a sentence of one year. (JA 670-71). The Commonwealth said, "It's a felony, but there's a wide, wide spectrum in that here, that particular charge is way down to the lower end, in the Commonwealth's view." (JA 671). The jury imposed only a single year. (JA 677). As to the credit-card fraud conviction, the Commonwealth also recommended a sentence of one year. (JA 674). The Commonwealth argued, "Then the credit-card fraud, same thing, I recommend one year. I say that too because of the spectrum. You know credit-card fraud could run from tens of thousands of dollars on up, and here you're much, much nearer the low end." (JA 674). The jury followed the Commonwealth's recommendation and only imposed a year incarceration for credit-card fraud. (JA 677).

The jury recommended a total sentence of 39 years in prison and did not recommend any concurrent sentence. (JA 678, JA 679). The circuit court ordered a presentence report and conducted a sentencing hearing. (JA 799). Because money laundering is not a guidelines offense, there were no sentencing guidelines. (JA 823-24). However, the court considered testimony that if larceny had been the primary

offense the guidelines would have been approximately 6 months. (JA 824). The court then considered mitigating evidence presented by Dillon and the argument of counsel. (JA 823-73).

The trial court asked Dillon if she had anything she wanted to say, and she asked the court for mercy; she did not complain about what she was told about the guidelines. (JA 869). During argument, the court acknowledged that it had the statutory authority to alter the recommended jury sentence by suspending a portion of that sentence or running the sentence currently. (JA 873). The court then stated, "I have changed some jury verdicts [on sentencing] and I am going to change this one." (JA 873). The court then ran 9 years of the sentence, including the one-year sentences for embezzlement and credit-card fraud, concurrent with the three 10-year sentences leaving an active sentence of 30 years. (JA 873).

During the sentencing hearing, the trial court noted, "the magnitude of this is unique, in my experience. I have never had someone . . . I've never had someone steal a house. I mean it's just not done." (JA 870). The court continued, "a person's home is sacrosanct. And the law has always treated it that way. Then to deprive someone of that is – is of a greater magnitude in my judgement." (JA 871).

**D. Dillon unsuccessfully challenges her convictions on direct appeal and in state habeas.**

The Court of Appeals of Virginia affirmed Dillon's convictions after granting an appeal on a venue issue. (JA 1092-1097). *Dillon v. Commonwealth*, No. 1375-16-3, 2017 Va. App. LEXIS 252 (Va. Ct. App. Oct. 10, 2017) (unpublished), *reh'g en banc denied* (Nov. 8, 2017). The Supreme Court of Virginia refused Dillon's petition for appeal on July 13, 2018. (JA 1106). (Record No. 171628).

Dillon filed a state habeas petition on June 6, 2019. (JA 948-1000). As relevant to the claims currently before this Court, Dillon raised the following claims in state habeas: Claim III(e)(6) alleging that counsel was ineffective for failing to understand the details of the case and the elements of the charges; and Claim III(d) alleging that that counsel was ineffective for failing to accurately explain the plea bargain process and misadvising her of the time she faced. (JA 295, JA 302-03, JA 310-11, JA 971, JA 979). In support of this claim, Dillon filed a document showing trial counsel's handwritten notes listing sentencing ranges for the charges she was facing and a notation beside them stating: "Client refused to accept bc will lose her job. Told could spend rest of life in jail." (JA 266, JA 1003, JA 1188).

The state habeas court dismissed each of these claims. The court found that Claim III(e)(6) to be without merit as a review of the entire trial established that counsel

understood the elements of the charges and did not render ineffective assistance of counsel. (JA 310-11).

As to Claim III(d) the state habeas court found that Dillon failed to establish what specific plea offer the Commonwealth made and her claims that she would have accepted a plea were not credible given that she believed she was innocent and wrongly convicted. (JA 303, JA 293-324).

The Supreme Court of Virginia refused Dillon's appeal on March 24, 2022, and the petition for rehearing on May 11, 2022. (Record No. 210212). (JA 325).

**E. The district court denies Dillon's § 2254 petition without a hearing.**

On April 18, 2022, Dillon filed a § 2254 petition in the Western District of Virginia. (JA 4-102). Claims relevant to the issues before this Court were: Claim 10, alleging that counsel misinformed her about the time she faced in prison. (JA 1187-89); and Claim 21, counsel failed to familiarize himself with the elements of charges. (JA 1199-1202). The district dismissed each of these claims. (JA 1188, JA 1199-1202).

As to Claim 10, the district court concluded that, based on the facts determined by the state court, the state court's decision to dismiss the claims was not unreasonable. (JA 1188-89). In reaching this conclusion, the district court referenced the document Dillon submitted in support of her claim showing trial counsel's handwritten notes listing sentencing ranges for the charges she was facing and a notation beside them

stating: "Client refused to accept bc will lose her job. Told could spend rest of life in jail." (JA 266, JA 1003, JA 1188).

In Claim 21, Dillon raised for the first time in federal habeas that counsel was ineffective for not moving to strike on the basis that credit-card fraud and embezzlement have "conflicting elements" and she could not have been convicted of both. The district court determined that, even though Dillon had not exhausted the claim in state court, the claim was a "substantial claim" that could be reached under *Martinez v. Ryan*, 566 U.S. 1 (2012). (JA 1199-1200). Although the district court concluded that only one of the two convictions can be valid, the court found Dillon was not entitled to habeas relief since those one-year sentences she received on each charge were run concurrently with the 30-year sentence she is serving on other charges. (JA 1202). The court reasoned:

> When a defendant receives concurrent sentences on multiple charges, if one of the convictions is valid, a habeas court need not pass on the validity of the other conviction, so long as "there is no substantial possibility that the unreviewed conviction will adversely affect the defendant's right to parole or expose him to a substantial risk of adverse collateral consequences." *United States v. Charles,* 932 F.3d 153, 159 (4th Cir. 2019) (emphasis and citation omitted). Relying upon this concurrent sentence rule, I will dismiss this claim.

(JA 1202).

Dillon noted an appeal to this Court and this Court initially granted a Certificate of Appealability (COA) as to this single issue. (ECF 16). However, after additional briefing by Dillon, this Court expanded the COA to include a second issue. (ECF 60).

## SUMMARY OF ARGUMENT

Trial counsel was not ineffective for failing to strike the credit-card-fraud charge. Counsel's performance was not deficient as any motion to strike the charge on sufficiency grounds would have been meritless. Counsel was required to object to the variance, and counsel is not ineffective for failing to make what would have been a futile motion. In addition, Dillon cannot establish any prejudice. The issue facing the trial court was a variance between the indictment and the proof adduced at trial. In such a scenario, the Commonwealth is allowed to amend the indictment to reflect the proof that was established at trial. *See* Virginia Code § 19.2-231 (indictments may be amended prior to a finding of guilt). As a result, any motion at trial would have resulted in an amended indictment for embezzlement. Moreover, Dillon cannot establish a different outcome had she been convicted of two counts of embezzlement instead of the charges for which she was convicted. Counsel was not ineffective, and the district court should be affirmed.

The district court did not abuse its discretion in not holding an evidentiary hearing and finding that the state habeas court's rulings were not unreasonable. (JA

1189). In addition to Dillon's own exhibit (JA 266, JA 1003) undercutting her claim, the district court found that the state habeas holding that Dillon was not credible when she claimed that she would have accepted a plea was not unreasonable. (JA 1189). Dillon has failed to overcome that holding. Dillon has also failed to establish that such a plea would have been accepted by the trial court. Importantly, Dillon's exhibit (JA 266, JA 1003) establishes that she was properly advised about the risks of going to trial and still chose to go to trial. The district court did not abuse its discretion, and it should be affirmed.

## STANDARDS OF REVIEW

This Court reviews "the district court's decision on a federal habeas petition de novo." *Crockett v. Clarke*, 35 F.4th 231, 240 (4th Cir. 2022). The Court reviews the district court's assessment "through the lens" of the AEDPA. *Id.* "Because such claims implicate concerns about federalism and comity, the standard for such claims is exceedingly high." *Id.* at 241.

The AEDPA "erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow*, 571 U.S. 12, 19 (2013). It "allows a federal court to correct only 'extreme malfunctions' in the resolution of federal issues by the criminal justice systems of the sovereign States." *McCarthy v. Hernandez*, 608 U.S. 809, 818 (2026) (per curiam) (quoting *Harrington*

*v. Richter*, 562 U.S. 86, 102 (2011)); *see also Brown v. Davenport*, 596 U.S. 118, 132 (2022) ("Granting habeas relief to a state prisoner 'intrudes on state sovereignty to a degree matched by few exercises of federal judicial authority.'") (quoting *Richter*, 562 U.S. at 103).

## ARGUMENT

### A. Trial counsel was not ineffective for not moving to strike the credit-card fraud charge.

Under *Strickland*, the petitioner has the burden to show that his attorney's performance was deficient *and* that he was prejudiced as a result. *See Strickland*, 466 U.S. at 687. "The essence of an ineffective assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict suspect." *Kimmelman v. Morrison*, 477 U.S. 365, 374 (1986). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. *See Burket v. Angelone*, 208 F.3d 172, 189 (4th Cir. 2000) (reviewing court "must be highly deferential in scrutinizing [counsel's] performance and must filter the distorting effects of hindsight from [its] analysis").

Federal courts reviewing state habeas court decisions must take a "'highly deferential' look at counsel's performance through the 'deferential lens of

§ 2254(d).'" *Pinholster*, 563 U.S. at 190 (citations omitted). "Surmounting *Strickland*'s high bar is never an easy task," but "establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Richter*, 562 U.S. at 105. When reviewing a state court's assessment of ineffective assistance of counsel claims, federal review is "doubly deferential," because the deferential standard of review under the statute overlaps with the deferential standard under *Strickland. Pinholster,* 563 U.S. at 190. Accordingly, the federal court is to afford "both the state court and the defense attorney the benefit of the doubt." *Burt,* 571 U.S. at 15.

The first prong of the *Strickland* test, the "performance" inquiry, "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. *See Yarborough v. Gentry*, 540 U.S. 1, 8 (2003) ("The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight.").

The second prong of the *Strickland* test, the "prejudice" inquiry, requires showing that there is a "*reasonable probability* that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S.

at 694 (emphasis added). A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id. See Richter*, 562 U.S. at 112.

An ineffective counsel claim may be disposed of on either prong because deficient performance and prejudice are "separate and distinct elements." *Spencer v. Murray*, 18 F.3d 229, 232-33 (4th Cir. 1994). *See Strickland*, 466 U.S. at 697.

### B. Counsel was not deficient because a motion to strike would have been meritless.

As an initial matter, Dillon improperly makes a new argument outside the scope of this Court's certificate of appealability. This Court only granted the issue of whether counsel was ineffective for failing to strike the credit card fraud charge. (ECF 16). But Dillon now argues that counsel was ineffective for failing to strike *both* of her charges for credit card fraud and embezzlement. (ECF 40 at 20-21). This new argument goes beyond the issues granted in the certificate of appealability, and so this Court should not reach it. *See, e.g.*, *Griggs*, 263 F.3d at 359 n.2; *see also United States v. Linder*, 561 F.3d 344, 339 n.6 (4th Cir. 2009) (citing *Carter v. Hopkins*, 151 F.3d at 872, 874 (8th Cir. 1998)).

In any event, Dillon's ineffective-assistance claim fails at the deficiency prong of *Strickland* because her convictions for credit card fraud and embezzlement are not mutually exclusive. Because attorneys are not deficient for declining to file meritless

motions, *see Moody v. Polk*, 408 F.3d 141, 151 (4th Cir. 2005), trial counsel was not deficient for not moving to strike the credit-card-fraud charge.

Relying on *United States v. Bethea*, 483 F.2d 1024, 1030 (4th Cir. 1973), Dillon argues that mutually exclusive offenses are more than just inconsistent verdicts; they are convictions for charges that are logically inconsistent. Dillon argues that as a result she may now raise a "due process challenge to a jury verdict." *Masoner v. Thurman*, 996 F.2d 1003, 1005 (9th Cir. 1993). (ECF 40 at 23-24). Dillon further asserts that because the credit-card fraud and embezzlement convictions must be vacated, all of the remaining charges should be subject to a resentencing hearing. (ECF 40 at 26-29).

Dillon's reliance (at ECF 40 at 23-24) on *Bethea*, 483 F.2d 1at 1030, is misplaced. In *Bethea*, the defendant was convicted of 1) failure to report for Draft induction, 2) failure to keep the Draft Board advised of his current address, and 3) failure to report for an Armed Forces examination. This Court held that the defendant could not factually be guilty of counts 1 and 3 and also guilty of count 2 because the defendant had to have provided an address to have been notified of the induction and the examination. *Bethea*, 483 F.2d at 1029. Thus, in *Bethea*, the conviction for failure to report *required* notice of an address and the claims were facially inconsistent. *Id.*

The defendant had permission to use the debit card as a debit card and when she did so outside the scope of her permission, that was embezzlement. However, when she used the card as a credit card, without any permission, that was credit card fraud. The charges are not facially inconsistent. *See United States v. Williams*, 89 F.3d 165, 168 n.2 (4th Cir. 1996) ("The *Bethea* case is only relevant if the charges are facially inconsistent."); *see also United States v. Berardi*, 675 F.2d 894, 901 n.15 (1982) (finding the jury verdicts were not inconsistent where one factually inconsistent count was not a predicate count for another and *Bethea* was not applicable to the case); *United States v. Mathis*, 579 F.2d 415, 418 (7th Cir. 1978) (finding no inconsistency between two guilty verdicts, one for unarmed assault and one for robbery of federal property, even though jury believed the defendant was not armed during the robbery).

Here the Commonwealth told the jury that the two charges were separate and independent both in time, and in elements. (JA 642-643). Specifically, the Commonwealth argued that the embezzlement charges arose from Dillon's use of Thompson's debit card, and that the credit card fraud arose from Dillon's use of the card as a credit card, which she did not have authorization to use in that way. (JA 481-82, JA 492). Based on these arguments, the two charges were not "mutually exclusive"; they were different uses for the card which were identifiable in the bank

statements. (JA 491-92). Dillon could both have permission to use the card as a debit card and not have permission to use the card as a credit card. Convicting Dillon of embezzlement for one use of the debit card thus does not "logically exclude[]," *United States v. Powell*, 469 U.S. 57, 69 n.8 (1984), her credit card fraud conviction for a different use of the same card.

Moreover, the embezzlement and the credit-card fraud were used for distinct incidents. The jury, in convicting Dillon for credit card fraud, only did so as to the one charge to Mary Kay, while the other embezzlement charge involved taking cash from the victim's bank account with the debit card, on other occasions *See, e.g.*, *Kanu v. Commonwealth*, Record No. 1729-19-4, 2020 Va. App. Lexis 287, at *10 (Va. App. Nov. 24, 2020) (holding that three counts of embezzlement for taking money out of registers was proper and opining that the Commonwealth could have charged Kanu with 20 individual acts of embezzlement). As a result, a motion to strike the credit-card-fraud charge would have failed.

### C. Dillon did not establish prejudice from the lack of a motion to strike.

#### 1. Even if such a motion were meritorious, the Commonwealth simply would have amended the charge to capture her obviously criminal conduct.

As an initial matter, under Virginia law, the proper motion would have been a motion to dismiss based on a fatal variance, which, if successful, would have

allowed the Commonwealth to amend the charge. A fatal variance occurs when the "criminal pleadings charge one offense and the evidence proves another." *Commonwealth v. Bass*, 786 S.E.2d 165, 173 (Va. 2016). Even where the evidence proves a different crime than the one charged in the indictment, the defendant must object before the verdict so that the Commonwealth may amend or risk waiver. *See* Va. Rule 3A:9(b)(2). Virginia Code § 19.2-227, requires that "any [fatal variance] objection to an indictment, to be a ground for reversal, be made before verdict." *Gomez v. Commonwealth*, 843 S.E.2d 379, 381 (Va. App. 2020) (alteration in original) (quoting *Stamper v. Commonwealth*, 324 S.E.2d 682, 686 (Va. 1985)). Failure to present any "objection that is capable of determination without the trial of the general issue . . . before the jury returns a verdict" constitutes a waiver. Va. Rule 3A:9(b)(2).

A variance motion, if successful, would have allowed the Commonwealth to amend the charge. Virginia Code § 19.2-231 permits an amendment to an indictment when "there shall appear to be any variance between the allegations therein and the evidence offered in proof thereof" and such amendment may be made "at any time before the jury returns a verdict." Both conditions were present at the close of all of the evidence. Had Dillon moved to strike the credit card charge arguing that Dillon had lawful possession of the card, and thus the crime was actually embezzlement under

*Saponaro*, Dillon cannot establish that the Commonwealth would not have then moved to amend the indictment to embezzlement, that the court would not have allowed such amendment, and Dillon would have had two convictions of embezzlement.[1] Thus, Dillon cannot establish *Strickland* prejudice and the claim must fail.

Even if a trial court denies such a motion but the variance argument succeeds on direct appeal, the Commonwealth may reindict the defendant and will not be barred by double jeopardy form doing so – if the evidence was sufficient to prove the uncharged offenses. *See Purvy v. Commonwealth*, 717 S.E.2d 847, 852 (Va. 2011) (finding fatal variance requiring reversal but stating that the Commonwealth may reindict for the proven but uncharged offense without offending double jeopardy). *See* Va. Code § 19.2-293 ("A person acquitted of an offense on the ground of a variance between the allegations and the proof of the indictment or other accusation, or upon an exception to the form or substance thereof, may be arraigned again on a new indictment or other proper accusation, and tried and convicted for the same offense, notwithstanding such former acquittal."); s*ee also Montana v. Hall*, 481 U.S. 400, 404 (1987) (holding "[i]t is clear that the Constitution permits retrial after a

[1] At the time of the offense, embezzlement of over $200 was a felony; so any amendment from credit-card fraud to embezzlement would have been a felony where Dillon's purchase of the Mary Kay cosmetics was over the statutory amount. *See* Va. Code Ann. § 18.2-95 (2017); (JA 643).

conviction is reversed because of a defect in the charging instrument" in a case where the prosecution "relied on the wrong statute" in the charging instrument and the defendant could have been convicted on the right statute); Charles E. Torcia, Wharton's Criminal Law § 58, at 435-36 (15th ed. 1993) (recognizing double jeopardy bar is inapplicable "where a variance between indictment and proof necessitated prosecution under a new indictment").

Had the Commonwealth moved to amend the indictment, Dillon would have been convicted of the same number of theft charges and would have received the same sentences. There is no reasonable probability of a different outcome. *See Strickland*, 466 U.S. at 694; *see also Richter*, 562 U.S. at 112.

For similar reasons, there were no circumstances at trial where both the credit card fraud and embezzlement charges would have been struck or dismissed, as Dillon now implies. Had counsel done what Dillon now says he should have done and moved to strike the credit card fraud, the most favorable outcome for Dillon was that the trial court would have granted the motion. If the trial court struck the credit card fraud charge, there would be no need to determine whether the embezzlement and the credit card fraud charges were mutually exclusive charges. Moreover, if the Commonwealth had amended the indictment for credit card fraud to reflect embezzlement, again there would be no basis to strike the original embezzlement

charge. This is especially true where the evidence clearly proved embezzlement. Here, "the evidence on one count was so clear as to leave no reasonable doubt about appellant's guilt on that count rather than the other." *Bethea*, 483 F.2d at 1030. As the district court correctly found, the jury "must have found that the debit card had been entrusted to Dillon." (ECF 23 at 48; JA 1201-02). Indeed, the victim testified at trial that Dillon was authorized to use his card to take care of certain expenses, such as "Ntelos and Netflix," and had authority to "take care of the bills" such as paying the electric bill, the car, the car insurance, and Cox Cable. (JA 481, JA 491). Given the evidence adduced at trial, the embezzlement conviction, at a minimum, should remain.

**2. Dillon cannot show that she would have received a lower sentence if convicted of another count of embezzlement, rather than credit-card fraud.**

The United States Supreme Court has held that if a judge sentences a defendant based on a material mistake as to their criminal record, and it is of a constitutional magnitude, a resentencing is appropriate. *See United States v. Tucker*, 404 U.S. 443, 447 (1972). There was no error as to Dillon's criminal record when she was sentenced, and the conduct at issue was criminal. She illegally took money from Thompson's bank account without permission. (JA 491-92). However, Dillon still argues that she should be entitled to a new sentencing hearing. (ECF 40 at 26-

29). Even if Dillon convinces this Court to vacate the credit-card fraud and embezzlement convictions, there is no basis for this Court to order an entire resentencing. There is no evidence that the credit-card fraud, or even the embezzlement charge, impacted Dillon's overall sentencing. Dillon illegally had the title to Thompson's home transferred into her name. (JA 441-44, JA 446, JA 481-83, JA 773-83). Dillon then sold his home. (JA 545-52, JA 688-89, JA 773-83). She did the same thing with his car and then sold the car. (JA 462-63, JA 464, JA 476-77, JA 488, JA 691-92, JA 699, JA 773-83). Dillon also sold the furniture and contents of the home. (JA 464, JA 476-77, JA 560-63, JA 603-05, JA 614-17, JA 699). To accomplish these sales, she forged a number of public records. (JA 455-57, JA 466-67, JA 503, JA 684-86, JA 691, JA 773-83). She was acting in total disregard of her victim. Her sentences reflect the callous nature of her actions. Dillon cannot credibly argue that charges involving several hundred dollars had such a significant impact on charges involving the victim's home, car, and all of his personal belongings, items that had an assessed value of close to $100,000. (JA 688-89). A new sentencing hearing for all of the charges is not warranted.

In addition, the Commonwealth recommended separate sentences on each of the charges for which Dillon was convicted, and the jury largely followed those recommendations. (JA 643, JA 671, JA 674). The jury considered each charge

independently and recommended a sentence for that charge. And the trial court exercised its discretion to run those sentences concurrently. In recommending sentences for the credit-card fraud and the embezzlement convictions, the Commonwealth acknowledged that they were far less serious than the other convictions and asked the jury to impose one-year sentences on each. (JA 642-43, JA 671, JA 674). At most, if this Court were to find that counsel's actions did in fact prejudice Dillon, the most this Court should do is to vacate the credit card fraud charge and the one-year sentence.

Moreover, as the claim raised here is outside the scope of the certificate of appealability, this Court should not address it. *Griggs*, 263 F.3d at 359 n.2. Had counsel moved to strike the credit card fraud charge, the Commonwealth would have moved to amend based on a variance, and Dillon would have been convicted of two counts of embezzlement and the sentences would have remained the same. Va. Code Ann. § § 19.2-227, 19.2-231; *Gomez*, 843 S.E.2d at 381. The best outcome for Dillon was that the trial court would have dismissed the credit card fraud charge and the Commonwealth did not move to amend the charge. Contrary to Dillon's argument, there is no reason to conclude that a new sentencing hearing is necessary for all of the charges, as the charges at issue were relatively insignificant compared to the uncontested convictions, and the Commonwealth argued that during the sentencing.

(JA 671). And in addition, no such resentencing is permitted under Virginia law as the remaining sentences were statutorily lawful and the jury was properly instructed. *See Rawls v. Commonwealth,* 683 S.E.2d 544, 549 (Va. 2009) (no resentencing of other sentences where sentences were within the statutory limits and the jury was properly instructed).

**3. Even if Dillon had established ineffective assistance as to the credit-card-fraud charge, the District Court did not err by applying the concurrent-sentencing doctrine.**

The district court did not err in holding that the concurrent sentencing doctrine applied to this case or in its determination that "there is no substantial possibility that the unreviewed conviction will adversely affect the defendant's right to parole or expose him to a substantial risk of adverse consequences." (ECF 23 at 49; JA 1201-02)).

The concurrent sentencing doctrine allows a court the "discretion to avoid resolution of legal issues affecting less than all of the counts in an indictment where at least one count will survive and the sentences on all counts are concurrent." *United States v. McKie*, 112 F.3d 626, 628 n.4 (3d Cir. 1997). This Court has also invoked the concurrent sentence doctrine. *See generally, United States v. Truong Dinh Hung*, 629 F.2d 908 (4th Cir. 1980). The purpose of this doctrine is to conserve resources where the defendant would be serving the same sentence regardless of the outcome.

*Duka v. United States*, 27 F.4th 189, 194 (3d Cir. 2022) (quoting *Jones v. Zimmerman,* 805 F.2d 1125, 1128 (3d Cir. 1986) relying on *Barnes v. United States*, 412 U.S. 837, 848 n. 16 (1973)); *United States v. Bey*, 736 F.2d 891, 893 (3d Cir. 1984); *United States v. Grimes*, 641 F.2d 96, 97 n. 2 (3d Cir. 1981); *United States v. Lampley*, 573 F.2d 783, 788 (3d Cir. 1978).

While Dillon argues that the concurrent sentencing doctrine is not applicable to this case, appellate courts have repeatedly stated, if the petitioner argues the concurrent sentencing doctrine is inappropriate because he is subject to unique collateral consequences, the petitioner bears the burden of identifying those unique collateral consequences. *See Gardner v. Warden Lewisburg USP*, 845 F.3d 99, 104 (3d Cir. 2017) (affirming application of concurrent sentence doctrine because petitioner "identifies no such [collateral] consequences in his case, even as he emphasizes this exception to the concurrent sentencing doctrine"); *United States v. Ross*, 801 F.3d 374, 382-83 (3d Cir. 2015) (similar). To do so, Dillon must establish some "additional harm" caused by the convictions at issue beyond her other convictions. *Ross*, 801 F.3d at 382.

In *Ross*, for example, the court considered, and rejected, the petitioner's argument that as a result of the additional convictions he was challenging, he would be subject to additional social stigma, his credibility could be more easily attacked

at a future hearing, he may be barred from a future benefit in a change in the law, his eligibility for parole, or a future sentence could be affected if convicted of a future crime. *Ross*, 801 F.3d at 382. The court held that, "most of the 'collateral consequences' that he identifies are supported by nothing more than speculation, which is insufficient." *Id.* at 383. These claims are nearly identical to the collateral consequences Dillon has asserted. (ECF 40 at 36-38). Just as in *Ross*, Dillon's claims are based solely on speculation and are insufficient.

Dillon argues that her unique collateral consequences for her convictions for credit card fraud and embezzlement are that these convictions could be used to impeach her and a conviction for embezzlement may affect her ability to obtain a job. (ECF 40 at 37). Dillon also argues that her felony convictions bar her from voting.[2] (ECF 40 at 37). In addition to being based almost solely on speculation, there is no material difference if she is going to be impeached by nine felonies involving moral turpitude or ten. That is also true for her job prospects once she is released from incarceration. As *Ross* makes clear, the issue is what "additional harm" the petitioner would face as a result of the challenged convictions. *Ross*, 801 F.3d at 382. The additional harm as presented by Dillon is not in fact additional

[2] Dillon asserts this is a permanent bar, but that is not necessarily the case. Virginia is voting this November on a measure to restore voting rights for felons after they are released from incarceration.

harm, those collateral consequences already exist as a result of her numerous other felony convictions.[3]

Dillon incorrectly argues that the concurrent sentencing doctrine has been limited or eliminated by the Supreme Court of the United States. (ECF 40 at 31). What is true is that *federal* claims of the concurrent sentencing doctrine have been limited by the imposition of a $50 assessment imposed on each federal count resulting in a conviction. *McKie*, 112 F.3d at 628 n.3. In *Ray v. United States*, 481 U.S. 736 (1987) (per curiam), the Supreme Court held that if each conviction is assessed a $50 fee, then the vacation of any one charge would result in a decrease in the defendant's punishment by $50, so the charges are not truly concurrent. *Id.* at 737. *Ray* merely defined concurrent sentences to not include convictions with separate monetary assessments. Here, by contrast there were not separate fees imposed for each conviction Dillon received, so her concurrent sentences are truly concurrent.

Indeed, as Dillon acknowledges, multiple circuits apply the concurrent sentence doctrine. *See* (ECF 40 at 33) (collecting cases). The concurrent sentence

---

[3] Also, Dillon refers to these convictions as wrongful convictions, but they are not wrongful convictions in the sense that her conduct was not criminal. She is guilty of illegally taking Thompson's money. The only issue before this Court is whether it should have been charged as embezzlement or credit card fraud.

doctrine is a viable legal doctrine applied by several circuits. The district court applied it correctly and validly in this case. There is no reversible error.

Dillon also argues that the concurrent sentencing doctrine does not apply because the entirety of Dillon's sentence would be subject to resentencing. (ECF 40 at 26-29). This argument is premised on the conclusion that the Court would have to vacate both the embezzlement and credit card fraud charges. As explained above, that premise is false. The evidence is clear that the embezzlement charge, at a minimum, should remain.

In any event, under Virginia law, there is no resentencing based on a sentencing package theory. In Virginia, when a single conviction is remanded for a new sentencing hearing, the defendant is not entitled to a new sentencing hearing on any or all of the additional convictions. *See Rawls,* 683 S.E.2d at 549 (no resentencing of other sentences where sentences were within the statutory limits and the jury was properly instructed). In *Rawls*, the court declined Rawls' request for a new sentencing hearing on his remaining convictions as the issue was not preserved and "[t]he jury was properly instructed on Rawls' other convictions, and the jury sentenced him within the statutorily prescribed ranges of punishment for those convictions." *Id. See also Woodard v. Commonwealth*, 754 S.E.2d 309, 312 (Va. 2014) (where the defendant is sentenced jointly for multiple offenses, the reversal of

some of those convictions and affirmance of others does not entitle the defendant to resentencing on the affirmed convictions). It would be inappropriate for Dillon to gain a potential windfall in her state sentence by waiting to raise this claim in this Court for the first time.

### D. The state habeas court did not unreasonably dispose of Dillon's *Lafler*/*Frye* claim, and the District Court did not abuse its discretion by not holding an evidentiary hearing.

When a state court has adjudicated a petitioner's claims on the merits, the availability of federal habeas relief is limited by § 2254(d). *Crockett*, 35 F.4th at 241. As this Court has recognized, "It is hard to overstate the difficulty of the burden that must be met" by a petitioner seeking relief under § 2254. *Id.* at 242. Under § 2254(d)(1), the petitioner is required to show that the state court's determination "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

A state court's decision is "contrary to" clearly established federal law only if it is "substantially different" from the relevant Supreme Court precedent; it is "an unreasonable application of" clearly established federal law only if it is "objectively unreasonable." *Williams v. Taylor*, 529 U.S. 362, 405, 409 (2000). "The starting point for cases subject to §2254(d)(1) is to identify the clearly established Federal

law, as determined by the Supreme Court of the United States, that governs the habeas petitioner's claims." *Marshall v. Rodgers*, 569 U.S. 58, 61 (2013) (internal quotation marks omitted). Circuit court precedent may not be used "to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that [the Supreme Court] has not announced." *Id.* at 64; *see Parker v. Matthews*, 567 U.S. 37, 48-49 (2012); *see also Virginia v. LeBlanc*, 582 U.S. 91, 94 (2017) (question at issue must have been presented to the Supreme Court).

To prove unreasonableness, a habeas petitioner must demonstrate that there is "no reasonable basis" for the state court's decision. *Cullen v. Pinholster*, 563 U.S. 170, 188 (2011). "[I]n order to obtain federal habeas relief, a state prisoner must 'show far more' than 'clear error.'" *Klein v. Martin*, 607 U.S. 213, 220 (2026) (per curiam) (quoting *Shinn v. Kayer*, 592 U.S. 111, 118 (2020) (per curiam) (additional citation omitted)); *see Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."). Indeed, the habeas petitioner must "establish that the state court 'blunder[ed] so badly that every fairminded jurist would disagree' with the decision." *Klein*, 607 U.S. at 220-21 (quoting *Mays v. Hines*, 592 U.S. 385, 392 (2021) (per curiam)).

Relief under § 2254(d)(2), may only be granted if the state court decision was based on an unreasonable determination of the facts. The federal court must conclude "not only that that the state court's determination was wrong, but that it was *unreasonable* in light of the evidence presented." *Crockett*, 35 F.4th at 241 (citation omitted). Furthermore, under § 2254(e)(1), federal habeas courts must "presume the correctness of the state court's factual findings unless applicants rebut this presumption with clear and convincing evidence." *Id.* (internal quotation marks omitted).

"In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) (citations omitted). A district court need not hold an evidentiary hearing "if the record refutes the applicant's factual allegations or otherwise precludes habeas relief." *Id.* In addition, this Court will "review a district court's decision to deny a habeas petitioner an evidentiary hearing for abuse of discretion." *Sigmon v. Stirling*, 956 F.3d 183, 198 (4th Cir. 2020)

Relief under § 2254(d)(2) may only be granted if the state court decision was based on an unreasonable determination of the facts. The federal court must

conclude "not only that that the state court's determination was wrong, but that it was unreasonable in light of the evidence presented." *Crockett*, 35 F.4th at 241 (citation omitted). Furthermore, under § 2254(e)(1), federal habeas courts must "presume the correctness of the state court's factual findings unless applicants rebut this presumption with clear and convincing evidence." *Id.* (internal quotation marks omitted). *See also Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (state habeas court's factual finding unreasonable where a clear factual error was shown by clear and convincing evidence).

In state habeas, Dillon argued that counsel was ineffective for failing to accurately explain the plea-bargain process, and for misadvising her of the time she faced, specifically that she was advised that her sentencing guidelines were between one day to six months for all of the charges and counsel did not tell her it would be 78 times greater if she invoked her right to trial. (JA 303). She further argued that, had she been aware of the risk, she would have accepted the plea rather than risk conviction at trial, and the court would have accepted it based on her lack of prior criminal history. (JA 303, JA 971).

The state habeas court resolved this claim by finding that Dillon had no specific evidence or claim of what the specific plea offer was and that Dillon's claim that she would have accepted the plea was not credible. (JA. 303). The district court

found that the state habeas court's findings were not unreasonable, denied an evidentiary hearing, and held that Dillon had failed to prove prejudice because she had not shown what the specific terms of any offer were. (JA 1188).

Dillon cannot establish the district court abused its discretion in declining to hold an evidentiary hearing. The district court had the entire state criminal and state habeas records before it. Dillon claims that she was affirmatively misadvised of her potential sentencing exposure at trial. (ECF 40 at 5, 7). She argues that, as a result, the district court erred in dismissing that claim without an evidentiary hearing. (ECF 40 at 43). Dillon does not reference, nor does she credibly challenge, the evidence (JA 266, JA 1003) relied upon by the district court to find that the state court's finding was not unreasonable. (ECF 40 at 38-48). Dillon's own exhibit filed in the state habeas circuit court contradicts her claim that counsel told her that *if she went to trial*, she could only receive a six-month sentence. On the contrary, the purported notes of defense counsel state, on what appears to be a document discussing an offer, "client refused to accept [plea offer] bc will lose her job. Told could spend rest of life in jail. 170 years." (JA 266, JA 1003). It was not an abuse of discretion for the district court to find that her evidence failed to rebut the state court's finding by clear and convincing evidence. (JA 1187-89). The evidence considered by the district

court establishes that Dillon was properly advised as to her sentencing exposure at trial.

Even assuming as true Dillon's bare claim that she rejected a plea because trial counsel did not advise her on the potential guidelines law, and by extension the sentences she faced, it is insufficient for her to sustain a claim based on *Lafler v. Cooper*, 566 U.S. 156 (2012), *and Missouri v. Frye*, 566 U.S. 134 (2012). In *Frye*, the Supreme Court held that counsel's failure to inform a criminal defendant of a plea offer that later expired constituted deficient performance under *Strickland*. *Frye*, 566 U.S. at 146-48. In *Lafler*, decided the same day as *Frye*, the parties conceded that counsel's performance was deficient where he convinced his client, who was interested in taking a plea deal, to reject it because counsel erroneously believed the defendant had a valid legal defense. *Lafler*, 566 U.S. 156-58. In both cases, the Court held that in order to demonstrate *Strickland* prejudice under such circumstances the petitioner would have to show a reasonable probability that he would have accepted the offer *and* that the plea would have been entered without the "prosecution canceling it or the trial court refusing to accept it, if they had the authority to exercise that discretion under state law." *Frye*, 566 U.S. at 148; *Lafler*, 566 U.S. at 163.

Neither of those circumstances occurred in this case; Dillon does not allege that trial counsel failed to inform her of a plea offer. To the contrary, Dillon's own exhibit reflects that counsel told Dillon that she could spend rest of her life in jail, but that she was unwilling to accept a potential plea because she would "lose her job." (JA 266). This document is a printout, apparently from the trial court's website, of all of the charges Dillon was facing at that time. (JA 266, JA 1003). On the form, there is writing that appears to explain the benefits of a potential plea offer made by the Commonwealth. (JA 266, JA 1003). The handwritten portion of the document identifies six charges out of the 14 she was facing before trial. (JA 266, 1003). The remaining nine charges are marked with a "np" next to them. This was likely shorthand for nolle prosequi, or an offer by the Commonwealth to drop those charges. Written next to the six remaining charges is a bracket and then "1d to 6 months." (JA 266). In Virginia, neither the court nor a jury are bound by the discretionary guidelines. "The Commission's sentencing guidelines 'are discretionary, rather than mandatory.'" *Woodard*, 754 S.E.2d at 312 (citing *West v. Director, Dep't of Corr.*, 639 S.E.2d 190, 196 (Va. 2007)). Dillon must have understood this because her own document shows that counsel told her she could spend the rest of her life in jail. (JA 1003). Even if the exact plea offer was conveyed to the petitioner that she now alleges, the document shows that she did not accept

the plea, after being advised that she could spend her life in prison. (JA 266, JA 1003).

Dillon argues that she was misadvised about her potential sentencing at trial and therefore did not accept the plea offered by the Commonwealth. (JA 92-93). However, unlike in *Lafler*, notes written by her counsel reflect that she was advised that she was facing 170 years, or "the rest of [her] life," in jail if she did not accept the offer. (JA 266, JA 1003). Thus, she has failed to rebut by clear and convincing evidence the state habeas court's factual conclusion that her allegations that she would have accepted the offer if she had known about the sentencing exposure were not credible. *See* 28 U.S.C. § 2254(e)(1) ("a determination on a factual issue made by a State court shall be presumed correct," unless the petitioner satisfies his "burden of rebutting the presumption of correctness by clear and convincing evidence.").

Dillon also offers no evidence as to *Lafler's* additional requirements that the plea would have been accepted without the "prosecution canceling it or the trial court refusing to accept" the plea; and it is her burden under *Lafler* to do so.

> Where the "prejudice alleged" is "[h]aving to stand trial" after ineffective assistance led to the rejection of a plea offer, a defendant must show a reasonable probability that, but for counsel's deficient performance, (1) "the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances)," (2) "the court would have accepted its terms," and (3) "the conviction or sentence, or both, under the offer terms would have

> been less severe than under the judgment and sentence that in fact were imposed."

*United States v. Flood*, 2026 U.S. App. LEXIS 24462, at *13 (4th Cir. Aug. 13, 2026) (quoting *Lafler*, 566 U.S. at 163-64); *see also Merzbacher v. Shearin*, 706 F.3d 356, 366 (4th Cir. 2013). In state habeas, Dillon's only allegation regarding the court's acceptance of her plea was that she had no record. (JA 971). No other evidence was proffered.

Such a proffer is necessary, not only because *Lafler* requires it, but also because in Virgina circuit courts have discretion to accept or reject plea agreements. Virginia Supreme Court Rule 3A:8 covers the procedure for plea agreements. Depending on the type of agreement, a trial court can either accept or reject a plea agreement. Va. Sup. Ct. R. 3A:8(c)(2). If the plea requires the Commonwealth to either dismiss some charges or agree to a specific sentence, and plea is rejected by the trial court the defendant may withdraw his guilty plea. Va. Sup. Ct. R. 3A:8(c)(2). However, if the plea calls for the Commonwealth to simply make a recommendation regarding sentencing that is not binding on the trial court, and the plea is rejected by the trial court the defendant would not have a right to withdraw his guilty plea. Va. Sup. Ct. R. 3A:8(c)(2).

In addition, in *Laster v. Russell*, 743 S.E.2d 272, 277 (Va. 2013), the Supreme Court of Virginia upheld a circuit court's denial of habeas relief on alleged

ineffectiveness during plea negotiations where the circuit court held that the plea would not have been accepted. *Laster*, 743 S.E.2d at 277. The court found that the petitioner "offered no evidence to prove this particular plea offer was within the bounds of acceptable plea agreements and sentences in the jurisdiction, or that" the trial judge "had ever accepted similar plea agreements and sentences in other cases involving similar facts and charges." *Laster*, 743 S.E.2d at 277. And it is important to note that at Dillon's sentencing, the trial judge commented, "the magnitude of this is unique, in my experience. I have never had someone . . . I've never had someone steal a house. I mean it's just not done." (JA 870). The court continued, "a person's home is sacrosanct. And the law has always treated it that way. Then to deprive someone of that is – is of a greater magnitude in my judgement." (JA 871). The reasonable inference to be drawn from these statements was that this court did not believe this was a typical grand larceny.

Also, in *Anaya v. Lumpkin*, 976 F.3d 545, 556 (5th Cir. 2020), the court grapples with question of what evidence is necessary for the petitioner to establish a plea would have been accepted by the trial court. In *Anaya*, the petitioner argued that simply pointing out that there were no "intervening circumstances" would be enough. *Anaya*, 976 F.3d at 556. However, the court, noting it was required to view the claim through the doubly deferential standard of § 2254(d) held that "it is not

'well understood and comprehended' that defendants bear no burden to supply affirmative proof that the . . . the court would have accepted" the plea. *Anaya*, 976 F.3d at 557. Dillon bears the burden of providing affirmative evidence that the trial court would have accepted the plea, and she has not done so.

The record supports the state habeas court's reasonable conclusion that Dillon refused the offer as she did not want to lose her job and likely did not believe she would be convicted. (JA 266, JA 1003). This decision to reject the plea offer knowing the seriousness of her possible sentence from a jury is consistent with Dillon's continued assertions of her innocence. Throughout habeas litigation, Dillon's constant themes are that she was wrongly convicted after witnesses lied at her trial, and that the victim was a sex offender and should not be believed. (JA 948-1000). She has taken no responsibility and has shown no remorse for the massive financial hardship she left to the victim. Her position since the trial is consistent with choosing to go to trial and face "life" instead of admitting responsibility and potentially facing a lesser sentence. As with the state court's legal conclusions, "[a] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010).

Moreover, the document also contains the handwritten words "170 years." The only reasonable inference is that counsel advised Dillon that her potential sentence could be as high as 170 years. Dillon now asserts that the sentencing ranges and the phrase "170 years" were not written in her presence and alleges that they were added later by counsel. Dillon thus seeks to use the portion of the document that she believes helps her but asks the Court to ignore the evidence that undermines her claim. But Dillon also ignores the statement on the document that states that she could spend the "rest of [her] life" in prison. While Dillon does not directly challenge the document on brief, she does make reference to her pro se pleading in the district court in which she asserts the document is not accurate. (ECF 40 at 40, 41, 42). However, Dillon has failed to proffer what motive counsel would have to add these at a later date, other than just saying, he was "filling in the blanks." (JA 93). Dillon's arguments do not rebut the state court finding by clear and convincing evidence.

As the written record establishes, counsel discussed with Dillon a potential plea, though the exact terms were not proven in state court. Even assuming that the terms are what Dillon now alleges, and that the offer she now alleges was made, her document also demonstrates that she refused that offer knowing that if she went to trial she could spend the rest of her life in prison. She has failed to rebut the state

court's factual finding that she was not credible by clear and convincing evidence. Consequently, the district court did not err in denying an evidentiary hearing.

## CONCLUSION

This Court should affirm the judgment of the district court.

Respectfully submitted,

Joseph Walters, DIRECTOR,
DEPARTMENT OF CORRECTIONS

Respondent-Appellee herein.

By: /s/ .
Craig W. Stallard
Counsel

Craig W. Stallard
Senior Assistant Attorney General
Virginia State Bar Number 43227
Office of the Attorney General
202 North Ninth Street
Richmond, Virginia 23219
Telephone: (804) 786-4073
Facsimile: (804) 786-0142
oagcriminallitigation@oag.state.va.us
Counsel for Respondent-Appellee

**UNITED STATES COURT OF APPEALS**
**FOR THE FOURTH CIRCUIT**

**No. 23-6995 Caption: Shebri Stacy Dillon v. Joseph Walters, Director**

## CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a)

Certificate of Compliance With Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

1. This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

   [x] this brief contains _____words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

   [ ] this brief uses a monospaced typeface and contains _______ lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   [x] this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2007 in 14 point Times New Roman; *or*

   [ ] this brief has been prepared in a monospaced typeface using _____________ with __________ characters per inch and _________.

/s/ .
Craig W. Stallard
Attorney for Respondent-Appellee
Dated: October 8, 2026

# CERTIFICATE OF SERVICE

I certify that on October 8, 2026, the foregoing document was electronically filed with the Clerk of Court using the CM/ECF System, and was emailed to counsel for the petitioner at:

Joshua M. Wesneski, Esq.,
joshua.wesneski@weil.com

Counsel of Record
Weil, Gotshall & Manges LLP

/s/ .

Craig W. Stallard
Senior Assistant Attorney General
Virginia State Bar Number 43227
Attorney for Respondent-Appellant
Office of the Attorney General
202 North Ninth Street
Richmond, Virginia 23219
Telephone: (804) 786-5390
Facsimile: (804) 786-0142
oagcriminallitigation@oag.state.va.us