No. 23-6995

# United States Court of Appeals for the Fourth Circuit

SHEBRI STACY DILLON,
*Petitioner-Appellant*,
v.
JOSEPH WALTERS,
*Respondent-Appellee*.

On Appeal from the
United States District Court for the Western District of Virginia,
No. 7:22-cv-00215-JPJ-PMS, Senior Judge James P. Jones

## PETITIONER-APPELLANT'S REPLY BRIEF

Joshua M. Wesneski
*Counsel of Record*
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
(202) 682-7248
joshua.wesneski@weil.com

November 12, 2026

*Counsel for Petitioner-Appellant Shebri Stacy Dillon*

## TABLE OF CONTENTS


Introduction ........................................................................................ 1

Argument ............................................................................................. 4

I. Dillon's Counsel Was Prejudicially Ineffective by Failing to Seek Vacatur of Two Mutually Exclusive Convictions ...................... 4

A. Dillon's Convictions Are Mutually Exclusive ............................... 5

B. Counsel's Ineffective Assistance Prejudiced Dillon ...................... 8

C. The Concurrent Sentencing Doctrine Does Not Apply ............. 13

II. Dillon's Counsel Prejudiced Her with Inaccurate Plea-Bargaining and Sentencing Advice ................................................. 17

A. Dillon Received Ineffective Assistance of Counsel at the Pleading Stage ......................................................................... 17

B. Dillon Is Entitled to an Evidentiary Hearing ............................ 21

Conclusion ........................................................................................ 28

Certificate of Compliance .................................................................. 29

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alabama v. Smith*,
490 U.S. 794 (1989)....27

*Anaya v. Lumpkin*,
976 F.3d 545 (5th Cir. 2020)....26

*Baker v. United States*,
109 F.4th 187 (3d Cir. 2024)....23, 25

*Ball v. United States*,
470 U.S. 856 (1985)....11

*Batts v. Commonwealth*,
515 S.E.2d 307 (Va. Ct. App. 1999)....20

*Brumfield v. Cain*,
576 U.S. 305 (2015)....4

*Carafas v. LaVallee*,
391 U.S. 234 (1968)....16

*Commonwealth v. Bass*,
786 S.E.2d 165 (Va. 2016)....10

*Cooper v. United States*,
660 F. App'x 730 (11th Cir. 2016)....26

*Evans v. Commonwealth*,
308 S.E.2d 126 (Va. 1983)....6

*Evitts v. Lucey*,
469 U.S. 387 (1985)....16

*Gardner v. Commonwealth*,
546 S.E.2d 686 (Va. 2001)....10

*Gardner v. Warden Lewisburg USP*,
845 F.3d 99 (3d Cir. 2017) ........................................................ 14, 15

*Gordon v. Braxton*,
780 F.3d 196 (4th Cir. 2015) ........................................................ 1, 22

*Goyer v. Adams*,
2022 WL 17848959 (4th Cir. Dec. 22, 2022) ........................................ 23

*Griggs v. Maryland*,
263 F.3d 355 (4th Cir. 2001) ........................................................ 9

*Grueninger v. Dir., Dep't of Corr.*,
813 F.3d 517 (4th Cir. 2016) ........................................ 4, 5, 18, 25

*Juniper v. Zook*,
876 F.3d 551 (4th Cir. 2017) ........................................................ 1, 21

*Kaziu v. United States*,
108 F.4th 86 (2d Cir. 2024) ........................................................ 11

*Lafler v. Cooper*,
566 U.S. 156 (2012) ........................................................ 17, 21

*Laster v. Russell*,
743 S.E.2d 272 (Va. 2013) ........................................................ 27, 28

*Masoner v. Thurman*,
996 F.2d 1003 (9th Cir. 1993) ........................................................ 5

*Missouri v. Frye*,
566 U.S. 134 (2012) ........................................................ 26

*Murel v. Balt. City Crim. Ct.*,
407 U.S. 355 (1972) ........................................................ 16

*Ratliff v. Commonwealth*,
455 S.E.2d 259 (Va. Ct. App. 1995) ........................................................ 7

*Rose v. Lee*,
252 F.3d 676 (4th Cir. 2001) ........................................................ 12

*Rutledge v. United States*,
517 U.S. 292 (1996)........................................................1, 14, 16

*Saponaro v. Commonwealth*,
655 S.E.2d 49 (Va. Ct. App. 2008) ........................................4, 6

*Schriro v. Landrigan*,
550 U.S. 465 (2007)..............................................................23

*Sibron v. New York*,
392 U.S. 40 (1968)............................................................1, 16

*Smith v. United States*,
348 F.3d 545 (6th Cir. 2003) ..........................................20, 25

*Strickland v. Washington*,
466 U.S. 668 (1984)........................................................4, 13, 26

*Thompson v. Gansler*,
734 F. App'x 846 (4th Cir. 2018) ..............................................5

*Tillema v. Long*,
253 F.3d 494 (9th Cir. 2001) ....................................................9

*Townsend v. Sain*,
372 U.S. 293 (1963)...........................................................1, 21

*United States v. Bethea*,
483 F.2d 1024 (4th Cir. 1973) ..........................................5, 7, 8

*United States v. Binford*,
108 F.3d 723 (7th Cir. 1997) ..................................................11

*United States v. Brown*,
137 F.4th 248 (4th Cir. 2025).................................................24

*United States v. Chaney*,
911 F.3d 222 (4th Cir. 2018) ..................................................12

*United States v. Charles*,
932 F.3d 153 (4th Cir. 2019) ...................................1, 13, 14, 16

*United States v. Davis*,
112 F.3d 118 (3d Cir. 1997) .......... 11

*United States v. Day*,
969 F.2d 39 (3d Cir. 1992) .......... 20

*United States v. Flood*,
188 F.4th 250 (4th Cir. 2026) .......... 24

*United States v. Gordon*,
156 F.3d 376 (2d Cir. 1998) .......... 18

*United States v. Hadden*,
475 F.3d 652 (4th Cir. 2007) .......... 11

*United States v. Kearn*,
90 F.4th 1301 (10th Cir. 2024) .......... 20, 23, 25

*United States v. Knight*,
981 F.3d 1095 (D.C. Cir. 2020) .......... 24

*United States v. Linder*,
561 F.3d 339 (4th Cir. 2009) .......... 9

*United States v. Mayhew*,
995 F.3d 171 (4th Cir. 2021) .......... 1, 19, 22, 26, 28

*United States v. McCoy*,
215 F.3d 102 (D.C. Cir. 2000) .......... 21

*United States v. Ross*,
801 F.3d 374 (3d Cir. 2015) .......... 14, 15

*United States v. Slocum*,
106 F.4th 308 (4th Cir. 2024) .......... 8

*United States v. Ventura*,
864 F.3d 301 (4th Cir. 2017) .......... 1, 11

*United States v. Washington*,
619 F.3d 1252 (10th Cir. 2010) .......... 20

**Statutes**

28 U.S.C. § 2243 ........................................................................ 15

28 U.S.C. § 2254 ........................................................................ 15, 18

28 U.S.C. § 2254(d) ........................................................................ 4, 26

28 U.S.C. § 2255(a) ........................................................................ 15

Va. Code § 18.2-111 ........................................................................ 4

Va. Code § 18.2-192(a)(1) ........................................................................ 6

Va. Code § 18.2-195(1)(a) (2016) ........................................................................ 4

Va. Code § 19.2-231 ........................................................................ 11

Va. Code § 19.2-295 (2016) ........................................................................ 20

**Other Authorities**

Commonwealth of Va., Off. of the Att'y Gen., *Report: Fairfax County Commonwealth's Attorney* (Sept. 26, 2025), https://files.constantcontact.com/d3e83e11901/ef28d4a6-6b90-4907-b606-4e11d0bf8777.pdf?rdr=true .................................. 27

## INTRODUCTION

Petitioner Shebri Dillon received abjectly ineffective assistance of counsel in her state criminal proceedings, ultimately resulting in a staggering 30-year prison term for conduct that typically calls for just a few months in prison. This miscarriage of justice cries out for habeas relief. The district court was wrong to deny that relief, particularly without even holding an evidentiary hearing on disputed issues of fact.

In its response brief, the Commonwealth makes little effort to defend the reasoning of either the district court below or the state court. Instead, it offers alternative justifications for denying Dillon's habeas petition, many of which raise factual disputes inappropriate for appellate resolution or fail to take account of governing precedent. The Commonwealth offers little *legal* basis for its arguments, and indeed, the list of binding precedent cited by Dillon but ignored by the Commonwealth is long.[1]

Dillon's first basis for habeas relief—that her convictions for embezzlement and credit card fraud are mutually exclusive and therefore violate due process—is well supported by precedent from this Court and

---

[1] *See, e.g.*, *Rutledge v. United States*, 517 U.S. 292 (1996); *Sibron v. New York*, 392 U.S. 40 (1968); *Townsend v. Sain*, 372 U.S. 293 (1963); *United States v. Mayhew*, 995 F.3d 171 (4th Cir. 2021); *United States v. Charles*, 932 F.3d 153 (4th Cir. 2019); *Juniper v. Zook*, 876 F.3d 551 (4th Cir. 2017); *United States v. Ventura*, 864 F.3d 301 (4th Cir. 2017); *Gordon v. Braxton*, 780 F.3d 196 (4th Cir. 2015).

others. The Commonwealth does not engage with much of that precedent and instead asserts that Dillon's credit card fraud conviction was actually for her use of Thompson's debit card "as a credit card" without "authorization." That theory appears nowhere in the underlying record, but more crucially, it does not cure the underlying conflict—use of a debit card without "authorization" is *embezzlement*, but Dillon was convicted of the mutually exclusive charge of fraud, which requires that the card have been *obtained* illegally. Virginia courts have rejected precisely this theory of credit card fraud.

As to prejudice, the Commonwealth invokes the law of fatal variance, which has no application here—the defect is not in any mismatch between the evidence at trial and the charges levied, but rather in the inconsistency between two charges of which Dillon was convicted. The Commonwealth does not address the well-settled precedent regarding the sentencing package doctrine, and its arguments under the concurrent sentence doctrine defy this Court's precedent.

Dillon's second basis for habeas relief—the inaccurate advice Dillon received about her sentencing exposure at trial—is equally meritorious. Relying extensively on a single, hand-written hearsay document whose purported author declined to testify in the state court proceedings, the Commonwealth attempts to raise a factual dispute about what Dillon's trial

counsel actually told her. But neither the state court nor the district court ruled on that basis, and this Court does not resolve factual questions in the first instance. In any event, the Commonwealth misunderstands the key (and inexcusable) error in trial counsel's advice: Even if trial counsel correctly informed Dillon of the statutory *maximum* for her charges, he incorrectly advised her about how the sentencing *guidelines* would apply to her after trial. Courts have repeatedly recognized that counsel has an obligation to maintain basic familiarity with the mechanics of the sentencing guidelines.

On prejudice, the Commonwealth again resorts to factual disputes and again fails to engage with the controlling precedent. Where, as here, a petitioner was unreasonably denied an opportunity to develop the factual record in state court, she is entitled to an evidentiary hearing if she satisfies the test and factors set forth by this Court in *Juniper v. Zook* and the Supreme Court in *Townsend v. Sain*. The Commonwealth does not apply that test. Instead, it falls back again on its preferred interpretation of trial counsel's hand-written notes, which again fails. And its argument that Dillon has failed to prove that the trial court would have accepted the plea offer misunderstands the standard and is without factual support.

The sentence imposed on Dillon is grossly disproportionate to the underlying conduct. While that is not itself grounds for habeas relief, it is an

undeniable symptom of the constitutionally deficient legal representation she received. There is no justice in allowing Dillon's convictions and sentence to stand.

## ARGUMENT

Each of Dillon's habeas claims arises under *Strickland v. Washington*, 466 U.S. 668 (1984), requiring both deficient representation and prejudice. *Id.* at 687–88. Dillon has established both elements for each theory of habeas relief—or at the very least has raised factual questions that can be resolved only after an evidentiary hearing.

Although the Antiterrorism and Effective Death Penalty Act ("AEDPA") typically demands a heightened level of deference to the last reasoned state court determination, *see* 28 U.S.C. § 2254(d), that deference does not apply to issues not considered by the state courts, *see Brumfield v. Cain*, 576 U.S. 305, 323 (2015); *Grueninger v. Dir., Dep't of Corr.*, 813 F.3d 517, 528 (4th Cir. 2016). And as set forth below, many of the Commonwealth's arguments on appeal were not addressed (or accepted) by the state court, nor even by the district court. The standard of review for those arguments is therefore de novo.

### I. Dillon's Counsel Was Prejudicially Ineffective by Failing to Seek Vacatur of Two Mutually Exclusive Convictions

Under Virginia law, embezzlement (Va. Code § 18.2-111) and credit card fraud (Va. Code § 18.2-195(1)(a) (2016)) are mutually exclusive. *See*

*Saponaro v. Commonwealth*, 655 S.E.2d 49, 51 (Va. Ct. App. 2008). A defendant cannot both unlawfully *obtain* a credit card (fraud) and also exceed his *authorization* to use that card (embezzlement). Yet Dillon was convicted of both offenses for the same card, in violation of due process, and the appropriate relief is vacatur of Dillon's sentence. Because this issue was not raised in the state habeas proceeding, there is no AEDPA deference. *See Grueninger*, 813 F.3d at 526.[2]

### A. Dillon's Convictions Are Mutually Exclusive

The Commonwealth does not dispute that subjecting a defendant to mutually exclusive convictions violates due process. *See, e.g.*, *Masoner v. Thurman*, 996 F.2d 1003, 1005 (9th Cir. 1993); *United States v. Bethea*, 483 F.2d 1024, 1030 (4th Cir. 1973); *see also* Opening Br. 23–24. Nor does the Commonwealth dispute that an attorney's failure to identify and object to mutually exclusive verdicts, without any strategic justification, amounts to ineffective assistance of counsel. *See Thompson v. Gansler*, 734 F. App'x 846, 857 (4th Cir. 2018). Instead, the Commonwealth argues that the credit card fraud and embezzlement charges are not actually mutually exclusive. *See* Resp. Br. 19–22. That position cannot be squared with Virginia law—which holds that "one's misuse of a credit card lawfully possessed … is distinct from

---

[2] The Commonwealth (correctly) does not argue that this claim is procedurally defaulted. *See* Opening Br. 20–21.

one's misuse of a credit card wrongfully in his or her possession," *Saponaro*, 655 S.E.2d at 51—or the record.

The Commonwealth offers the new theory that Dillon was guilty of embezzlement when she used the debit card "as a debit card" but guilty of fraud when she used the debit card "as a credit card," because she did not have "authorization" to use it "as a credit card." Resp. Br. 21. But a lack of "authorization" cannot be the basis for credit card fraud: That was the issue in *Saponaro*, which rejected the Commonwealth's argument that "credit card fraud occurs under this provision where the cardholder gives his or her consent for the accused to use the card only for a specific, limited purpose, and the accused violates that limitation." 655 S.E.2d at 51. Instead, the relevant question is whether the defendant "had the cardholder's consent to *possess* the card." *Id.* at 50 (emphasis added). That flows from the plain text of the statute, which requires that the defendant have "take[n]" or "obtain[ed]" the card without the holder's consent. Va. Code § 18.2-192(a)(1).

If Dillon lawfully obtained the debit card but used it in excess of her authorization, that is not fraud—it is embezzlement. *See Evans v. Commonwealth*, 308 S.E.2d 126, 129 (Va. 1983) (conversion element of embezzlement requires the "[u]nauthorized and wrongful exercise of dominion and control over another's personal property"). And if she did not lawfully obtain the debit card, she might have been guilty of fraud, but she

could not have been convicted of embezzlement. *See Ratliff v. Commonwealth*, 455 S.E.2d 259, 260 n.2 (Va. Ct. App. 1995) ("Embezzlement is the fraudulent appropriation of property by one *lawfully entrusted* with its possession." (emphasis added)). Thus, Dillon "could not have been entrusted with the card and simultaneously wrongfully possess it." JA1201. That is an inconsistency in the *elements* of the two offenses, which cannot be resolved by the Commonwealth's hindsight reasoning. *See Bethea*, 483 F.2d at 1030.

Moreover, the Commonwealth's proposed distinction appears nowhere in the underlying trial record. Thompson testified that his debit and credit card charges were "[t]he same thing, you just have to swipe [the card] first and put the pin" in for debit. JA492. He never suggested that Dillon's authorization extended only to the debit card function of the card and not the credit card function. The Commonwealth's counsel agreed in closing: "Remember the testimony is the debit card is linked to the credit card or vice versa, the credit card linked to debit card." JA643. The only testimony about the scope of authorization was with respect to the purchases Dillon was allowed to make—not whether she was allowed to use the debit card as a credit card. JA491–492.[3]

[3] Nor does it matter that the embezzlement and fraud charges were for "distinct incidents." Resp. Br. 22. There is no evidence (or argument) that Ms. Dillon lawfully possessed the debit card for the embezzlement purchases but unlawfully possessed it for the credit card purchase.

Competent counsel "must raise an argument where relevant authority strongly suggested it." *United States v. Slocum*, 106 F.4th 308, 317 (4th Cir. 2024) (alteration and quotation marks omitted). Other than its erroneous conflation of embezzlement and fraud, the Commonwealth offers no strategic rationale for counsel's failure to challenge the mutual exclusivity of the two convictions. Counsel was therefore constitutionally ineffective.

**B. Counsel's Ineffective Assistance Prejudiced Dillon**

As explained in Dillon's opening brief, Dillon was prejudiced by counsel's failure to raise a challenge to her mutually exclusive convictions, because had counsel timely raised the issue, both of the mutually exclusive convictions would have had to be vacated. And under the sentencing package doctrine, vacatur of one *or* both of the challenged convictions compels vacatur of Dillon's sentence. *See* Opening Br. 25–30.

The Commonwealth does not meaningfully engage with these legal principles, and the arguments it does raise are unpersuasive.

**1.** Where two convictions are mutually exclusive, both must be vacated unless "the evidence on one count was so clear as to leave no reasonable doubt about appellant's guilt on that count rather than the other[]." *Bethea*, 483 F.2d at 1030. There is no evidence here that would permit a piecemeal approach. In arguing otherwise, the Commonwealth quotes the district court's observation that to convict Dillon for embezzlement, the jury "must

have found that the debit card had been entrusted to Dillon." Resp. Br. 26 (quoting JA1201). The district court, however, was not commenting on the strength of the evidence, but rather on the logical inconsistency between credit card fraud and embezzlement. *See* JA1201–1202. As Dillon pointed out in her opening brief, the testimony was contradictory on this issue. *See* Opening Br. 26. There is no basis for vacating only one of the two convictions.

The Commonwealth next raises a procedural argument, urging that vacatur of the embezzlement conviction is beyond the scope of the certificate of appealability. *See* Resp. Br. 19. But "it is not arguments that are certified, it is issues and claims." *Tillema v. Long*, 253 F.3d 494, 502 n.11 (9th Cir. 2001), *overruled on other grounds by Pliler v. Ford*, 542 U.S. 225 (2004). The issue here is the mutual exclusivity of Dillon's fraud and embezzlement convictions, and the law is that two mutually exclusive convictions must *both* be vacated absent exceptional circumstances not present here. The only precedent the Commonwealth adduces on this point is a case addressing procedural default and waiver (not argued here), *see Griggs v. Maryland*, 263 F.3d 355, 359 n.2 (4th Cir. 2001), and a single-judge dissent from a denial of rehearing en banc, concerning the *government's* effort to raise arguments not presented below, *see United States v. Linder*, 561 F.3d 339, 344 n.6 (4th Cir. 2009) (mem.) (Motz, J., dissenting). Neither case applies here.

**2.** The Commonwealth next argues there is no prejudice to Dillon, because had trial counsel raised the issue, the Commonwealth could have amended the charges to capture Dillon's conduct under the doctrine of fatal variance. *See* Resp. Br. 22–26. This argument misunderstands the nature of the issues here and the scope of habeas relief.

Under Virginia law, a fatal variance occurs when the evidence proves a crime other than the one charged in the indictment. *See Gardner v. Commonwealth*, 546 S.E.2d 686, 689–90 (Va. 2001). For example, if the indictment charges attempted robbery but the evidence shows a completed robbery, there is a variance between the indictment and the evidence. *See Commonwealth v. Bass*, 786 S.E.2d 165, 170 (Va. 2016). A fatal variance typically must be raised after the submission of evidence and before the verdict is returned, and any variance is often cured by an amendment to the indictment. *See id.* at 169–70 & n.4, 172 n.6.

But the law of fatal variance has no application here. The issue is not whether the evidence at trial aligned with the indictment; it is that the jury convicted Dillon on two counts that are inconsistent *with each other*. The Commonwealth argues that Dillon's trial counsel should have moved to strike the "credit card charge," at "the close of all of the evidence." Resp. Br. 23. But there was no due process violation at the "close of all of the evidence"; the violation is in the mutually exclusive *convictions* rendered by the jury.

The Commonwealth was free to charge—and the jury would have been free to convict based on—alternative theories of embezzlement and fraud. *See Ball v. United States*, 470 U.S. 856, 861 (1985). But what the jury could not do is convict Dillon under *both* theories. For that reason, the Commonwealth's discussion about the procedure for raising (and curing) variances is inapposite. *See* Resp. Br. 23–25.[4]

**3.** The Commonwealth next argues there is insufficient evidence that the embezzlement and fraud charges affected Dillon's sentence. *See* Resp. Br. 26–29. Dillon addressed this issue at length in her opening brief. *See* Opening Br. 25–30. Under the sentencing package doctrine, vacatur of a conviction "unbundles the entire sentence package" and warrants resentencing. *United States v. Hadden*, 475 F.3d 652, 669 (4th Cir. 2007). It is most applicable where, as here, the charges are "interdependent." *United States v. Ventura*, 864 F.3d 301, 309 (4th Cir. 2017). And the doctrine "is just as applicable in the collateral attack context as it is in the direct appeal context." *United States v. Binford*, 108 F.3d 723, 729 (7th Cir. 1997). The proper remedy is therefore vacatur of Dillon's sentence in its entirety. *See Kaziu v. United States*, 108 F.4th 86, 93–94 (2d Cir. 2024); *United States v. Davis*, 112 F.3d 118, 122–23 (3d Cir. 1997).

---

[4] The Commonwealth also overlooks that an amendment to the indictment is permitted only if the amendment "does not change the nature or character of the offense charged." Va. Code § 19.2-231.

The Commonwealth's only discussion of the sentencing package doctrine comes in a different part of its brief, addressing the concurrent sentencing doctrine. Resp. Br. 33. But the Commonwealth does not discuss any of the federal precedent cited on this score. Instead, it reiterates its contention that there is no need to vacate both convictions, and that "the embezzlement charge, at a minimum, should remain." *Id.* But even if the Commonwealth were correct that only *one* of Dillon's convictions should be vacated, that conviction still would have tainted the sentencing record and resentencing would still be appropriate. *See United States v. Chaney*, 911 F.3d 222, 226 (4th Cir. 2018) (the sentencing package theory "provides that in appropriate circumstances resentencing on all counts is a proper remedy under § 2255 for a single unlawful conviction").

The Commonwealth's other argument is that Virginia does not recognize the sentencing package doctrine. *See* Resp. Br. 33. The precedent it cites does not address the doctrine: *Rawls v. Commonwealth* held the issue waived, *see* 683 S.E.2d 544, 549 (Va. 2009), and *Woodard v. Commonwealth* addressed only an argument about the effect of vacatur on the sentencing guidelines, *see* 754 S.E.2d 309, 312–13 (Va. 2014). But regardless, *federal* law controls the question of whether it is reasonably probable that counsel's ineffective assistance affected the result. *See Rose v. Lee*, 252 F.3d 676, 690

(4th Cir. 2001) ("[T]he only task remaining is application of a legal standard crafted pursuant to federal law ....").

The Commonwealth also fails to acknowledge—or dispute—that the jury-sentencing regime in place at the time of Dillon's conviction and sentencing heightens the importance of the doctrine. Even if the Court could have "confidence" that the trial judge would have not been swayed by the additional convictions, *Strickland*, 466 U.S. at 694, the same cannot be said for the jury, whose recommendations were virtually always accepted by judges, *see* Opening Br. 28–29. This added dimension makes application of the doctrine particularly important here.

### C. The Concurrent Sentencing Doctrine Does Not Apply

The sole basis for the denial of this habeas claim below was the district court's application of the "concurrent sentencing doctrine." JA1201–1202. On appeal, the Commonwealth does not dispute that if Dillon must be resentenced in full, then the concurrent sentencing doctrine does not apply. *See* Opening Br. 30–31; *cf. United States v. Charles*, 932 F.3d 153, 158 (4th Cir. 2019) (observing that "the concurrent sentence doctrine rests on the same rationale underlying harmless-error review"). Because the sentencing package doctrine applies here and requires vacatur of Dillon's sentence, the concurrent sentencing doctrine plays no role here and the Court need not examine it any further.

Even if the sentencing package doctrine did not apply here, however, the district court's application of the concurrent sentence doctrine would still be error. The law of this Circuit is that "the concurrent sentence doctrine cannot be applied to avoid reviewing the validity of one of a defendant's convictions." *Charles*, 932 F.3d at 160 (addressing the doctrine in the federal habeas context). That rule flows from the Supreme Court's decision in *Rutledge v. United States*, which held that "the collateral consequences of a second conviction make it as presumptively impermissible to impose as it would be to impose any other unauthorized cumulative sentence." 517 U.S. 292, 302 (1996).

The Commonwealth does not discuss *Charles* or *Rutledge* at all. *See* Resp. Br. 29–34. Instead, it urges this Court to follow out-of-circuit precedent from the Third Circuit. *See id.* at 30–32 (citing *Gardner v. Warden Lewisburg USP*, 845 F.3d 99 (3d Cir. 2017); *United States v. Ross*, 801 F.3d 374 (3d Cir. 2015)). Those cases do not control over this Court's decision in *Charles* or the Supreme Court's decision in *Rutledge*, and so the Commonwealth's argument can be disposed of on that basis alone. But even if Third Circuit precedent were relevant here, it is not in tension with Dillon's position.

The question in *Ross* was not whether the petitioner could establish a reasonable probability of a different outcome under *Strickland*—it was

whether the petitioner was "claiming the right to be released" from "custody," as is required for a habeas claim under 28 U.S.C. § 2255(a). *See Ross*, 801 F.3d at 379–83. The Third Circuit explained that a petitioner is in "custody" when there is a restraint on the petitioner's liberty that is "(1) severe, (2) immediate (*i.e.*, not speculative), and (3) not shared by the public generally." *Id.* at 379. The court ultimately concluded that neither a special assessment nor the collateral consequences incidental to a conviction were sufficient to rise to the level of "custody," and distinguished *Rutledge* on the ground that it did not address whether a special assessment "constitutes 'custody' within the meaning of section 2255." *Id.* at 381; *see also id.* at 382–83. The Third Circuit in *Gardner* applied the rule from *Ross*. 845 F.3d at 104.

But as Dillon explained in her opening brief, *see* Opening Br. 34–35, and as the Commonwealth does not dispute or address, 28 U.S.C. § 2254—applicable to habeas petitions directed at *state* custody—contains no comparable language. Unlike Section 2255—which requires that the petitioner be "claiming the right to be released" from "custody"—Section 2254(a) requires only that the petitioner assert that "he is in custody in violation of the Constitution or laws or treaties of the United States." So long as that condition is satisfied, the court is empowered to "dispose of the matter as law and justice require," 28 U.S.C. § 2243. Here, there is no dispute that

Dillon "is in custody," and she plainly claims her confinement is "in violation of the Constitution." The unique statutory requirement imposed by Section 2255 and analyzed in *Ross* simply does not apply to Dillon.

For purposes of establishing a reasonable probability of a different outcome, what matters is that it is an "obvious fact of life that most criminal convictions do in fact entail adverse collateral legal consequences." *Sibron v. New York*, 392 U.S. 40, 55 (1968). The possibility that habeas relief from Dillon's mutually exclusive convictions may not immediately result in a reduced sentence does not undermine the appropriateness of habeas relief under Section 2254. *See Evitts v. Lucey*, 469 U.S. 387, 391 n.4 (1985); *Murel v. Balt. City Crim. Ct.*, 407 U.S. 355, 357 & n.3 (1972). Once again, the Commonwealth does not acknowledge this binding precedent.

Finally, the Commonwealth argues that to the extent the concurrent sentencing doctrine has been narrowed, that narrowing applies only to federal claims that result in a special assessment. *See* Resp. Br. 32. That is incorrect: This Court in *Charles* recognized that "even beyond the existence of a special assessment for each of multiple convictions, the [Supreme] Court has indicated that there are other collateral consequences attaching to unreviewed *convictions* that limit the applicability of the concurrent sentence doctrine." 932 F.3d at 160 (citing *Rutledge*, 517 U.S. at 302); *see also Carafas v. LaVallee*, 391 U.S. 234, 239 (1968) (entertaining writ

notwithstanding post-filing release from custody because the petitioner "is suffering, and will continue to suffer, serious disabilities"). The Commonwealth's expansive application of the doctrine is therefore inconsistent with binding precedent and should be rejected.

## II. Dillon's Counsel Prejudiced Her with Inaccurate Plea-Bargaining and Sentencing Advice

The plea offer to Dillon contemplated an upper guideline range of six months. Dillon rejected it based on her trial counsel's inaccurate advice that she would face the same guideline range if convicted at trial. That is ineffective assistance of counsel.

### A. Dillon Received Ineffective Assistance of Counsel at the Pleading Stage

The Commonwealth does not dispute that a failure to provide accurate advice during plea bargaining constitutes ineffective assistance of counsel. *See Lafler v. Cooper*, 566 U.S. 156, 162 (2012). The Commonwealth also does not defend the state court's assertion that Dillon's claim should be rejected because she "has failed to assert there was [a] plea offer for her to accept and has failed to allege that she asked counsel to seek a plea agreement." JA303. As the Commonwealth admitted below, the evidence before the state court shows that Dillon *had* received a plea offer with a high guideline range of six

months, JA1138–1139, and the Commonwealth has not disavowed that representation on appeal.[5]

Instead, the Commonwealth avers that Dillon's trial counsel *did* advise her of the sentence she faced if she proceeded to trial. *See* Resp. Br. 38–41. This argument is based entirely on hand-written notes from Dillon's trial counsel purporting to recount a conversation with Dillon. *See* JA266. The Commonwealth's argument is wrong on both the law and the facts.

*First*, the Commonwealth impermissibly asks this Court to make factual findings on appeal. Contrary to the Commonwealth's account, *see* Resp. Br. 38, neither the state court nor the district court below found that Dillon's trial counsel had advised her of the prospective sentence. For that reason, there is no deference to the state court's decision under 28 U.S.C. § 2254. *See Grueninger*, 813 F.3d at 528. And Dillon disputes the accuracy of the hearsay cited by the Commonwealth. JA92–93. Notably, although the Commonwealth asked trial counsel to submit a declaration in Dillon's state habeas appeal, he never did so. JA1008–1023.

Nor can this Court accept the Commonwealth's interpretation of the facts over Dillon's. In *United States v. Mayhew*, 995 F.3d 171 (4th Cir.

---

[5] It would not matter, though, if there was no evidence of a plea offer. As the Commonwealth does not dispute, "whether the government … made a formal plea offer [is] irrelevant." *United States v. Gordon*, 156 F.3d 376, 380 (2d Cir. 1998).

2021)—which Dillon discussed in her opening brief but which the Commonwealth ignores, *see* Opening Br. 39—the petitioner argued (as Dillon does here) that his counsel had misadvised him of the time he faced under the sentencing guidelines if convicted at trial. *See Mayhew*, 995 F.3d at 177. And there, as here, the government argued that habeas relief should be denied because the petitioner had not substantiated his allegation with anything more than his own sworn petition. *See id.* at 178.

This Court rejected that argument. A habeas petitioner, the Court explained, "is entitled to an evidentiary hearing on his claim unless the record 'conclusively shows' that he did *not* receive the misinformation in question." *Mayhew*, 995 F.3d at 178 (alteration omitted). It was sufficient that the petitioner had "declared, in his signed *pro se* [habeas] petition and under penalty of perjury," that he had received inaccurate advice regarding his sentencing exposure. *Id.* While the government protested the "credibility" of that attestation, the Court considered itself "in no position to evaluate [the petitioner's] credibility … on appeal; that is what evidentiary hearings are for." *Id.* at 179. The same is true here—the Commonwealth's arguments raise questions of fact, which cannot be resolved against Dillon without an evidentiary hearing.

*Second*, the Commonwealth misunderstands the issue. While Dillon has denied ever receiving advice about the *statutory* maximum sentence she

would face at trial, even if counsel had informed her of that fact, she "was never informed that having a jury trial meant that her personal *guidelines* would be replaced with the jury recommendation." JA92 (emphasis added). That was because Dillon was never advised that the *jury* would be recommending her sentence, without knowledge of the guidelines. *See* Va. Code § 19.2-295 (2016); *Batts v. Commonwealth*, 515 S.E.2d 307, 314–15 (Va. Ct. App. 1999). Instead, she was led to believe that "she faced one day to six months of incarceration" if she was convicted at trial. JA92.

The Commonwealth does not dispute that the advice Dillon asserts she received—that her *guidelines* sentencing exposure after trial would be only six months—was patently false. And "it is certainly not a strategic choice to provide incomplete or inaccurate advice." *United States v. Kearn*, 90 F.4th 1301, 1308 (10th Cir. 2024). Indeed, courts have repeatedly recognized that the failure of trial counsel to understand "the structure and basic content of the [Federal Sentencing] Guidelines" constitutes ineffective assistance. *United States v. Day*, 969 F.2d 39, 43 (3d Cir. 1992); *see also United States v. Washington*, 619 F.3d 1252, 1260 (10th Cir. 2010) (counsel is ineffective if he "failed to understand the basic structure and mechanics of the sentencing guidelines"); *Smith v. United States*, 348 F.3d 545, 553 (6th Cir. 2003) ("[W]e do not see how sentence exposure can be fully explained without completely exploring the ranges of penalties under likely guideline scoring scenarios

….”); *United States v. McCoy*, 215 F.3d 102, 108 (D.C. Cir. 2000) (similar). That precedent applies with at least as much force—if not more—here, where counsel misapprehended whether Virginia's guidelines would apply *at all* to Dillon following trial.

### B. Dillon Is Entitled to an Evidentiary Hearing

The test for prejudice in the context of a rejected plea offer is whether there is a reasonable probability that "loss of the plea opportunity led to a trial resulting in a conviction on more serious charges or the imposition of a more severe sentence." *Lafler*, 566 U.S. at 168. An evidentiary hearing is the ordinary procedure for making that determination. *See id.* at 171. Where, as here, there was no adequate evidentiary development in the state habeas proceeding, a habeas petitioner is entitled to an evidentiary hearing so long as (1) he "diligently pursued his habeas corpus claim in state court," (2) "the facts alleged would entitle him to relief" under a standard akin to Federal Rule of Civil Procedure 12(b)(6), and (3) "he satisfies one of the six factors enumerated by the Supreme Court in *Townsend v. Sain*, 372 U.S. 293, 313 (1963)." *Juniper v. Zook*, 876 F.3d 551, 563–64 (4th Cir. 2017) (quotation marks omitted).

In opposition, the Commonwealth does not mention—let alone apply—the controlling framework from *Townsend* and *Juniper*. The Commonwealth does not dispute that Dillon diligently pursued her habeas

claim, including the claim regarding the inaccurate and misleading advice of counsel, *see* Opening Br. 44, that the facts, if proven as alleged, would entitle Dillon to relief, *see id.* at 44–45, or that Dillon satisfies at least three of the *Townsend* factors, *see id.* at 45.

Instead, the Commonwealth urges deference to the state court's "factual conclusion" that Dillon would not have accepted the plea offer had she understood the sentencing exposure. *See* Resp. Br. 41. That contention overlooks that no such deference is afforded where, as here, the state court "unreasonably refuse[d] to permit further development of the facts of a claim." *Gordon v. Braxton*, 780 F.3d 196, 202 (4th Cir. 2015) (quotation marks omitted). There was no evidentiary hearing in state court, despite the existence of material factual disputes about Dillon's credibility. *See Mayhew*, 995 F.3d at 179 ("credibility" of a habeas petitioner's contentions about plea-bargaining "can be determined 'conclusively' only after an evidentiary hearing"). The state court therefore could not have reliably made a determination about Dillon's credibility, and accordingly no deference is owed.

For that reason (and others), the Commonwealth's extensive reliance on trial counsel's hand-written notes is misplaced in this context as well. The state court did not rely on (or even cite) this document, *see* JA302–303, and the district court described it only as background, *see* JA1188. And that is

for good reason. For one, the Commonwealth's arguments rest almost entirely on its preferred *inferences* to be drawn from the document. *See* Resp. Br. 38 (arguing that the document "appears to be a document discussing an offer"), 40 ("[t]his document is a printout, apparently from the trial court's website"), 40 ("[t]his was likely shorthand"), *id.* ("Dillon must have understood this"). The fact that the Commonwealth cannot even say with confidence what this document *is* or what it *means*—to say nothing of its provenance—undermines any assertion that the record conclusively "refutes" Dillon's allegations. *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007); *cf. Goyer v. Adams*, 2022 WL 17848959, at *2 (4th Cir. Dec. 22, 2022) (vacating and remanding dismissal of habeas petition where the petitioner denied the authenticity of documentation).

More pointedly, even if Dillon was properly advised of her maximum sentencing exposure and nonetheless declined the plea offer, that does not shed light on what she would have done had counsel properly explained to her the change in *guidelines* exposure she faced as a result of proceeding to trial. The dramatic disparity between the sentence offered and the exposure at trial is itself "sufficient to establish a reasonable probability the defendant would have made an agreement." *Baker v. United States*, 109 F.4th 187, 197 (3d Cir. 2024); *see also Kearn*, 90 F.4th at 1312 (finding prejudice where "counsel improperly skewed [the petitioner's] attention away from the

sizeable sentencing disparity he faced"); *United States v. Knight*, 981 F.3d 1095, 1103 (D.C. Cir. 2020) ("This significant sentencing disparity is contemporaneous evidence that [the petitioner] would have accepted the plea offer had counsel correctly apprised him of how favorable it was and of the sentencing exposure he would face if he declined the offer and went to trial."). And Dillon has affirmed in her habeas petition that had she been aware of the effect going to trial would have on her "expected personal guidelines," "she would have likely took the plea, especially considering that her children hung in the balance." JA95; *cf. also United States v. Flood*, 188 F.4th 250, 260 & n.8, 264 (4th Cir. 2026) (affirming denial of habeas relief and evidentiary hearing where the petitioner never stated he would have accepted a plea offer requiring cooperation). The credibility of Dillon's testimony is a matter for the district court to resolve after an evidentiary hearing. *See United States v. Brown*, 137 F.4th 248, 257 (4th Cir. 2025) (vacating denial of habeas relief in part because the petitioner testified that he would have taken the plea offer had he been accurately advised).

The Commonwealth, like the state court, points to the fact that Dillon has maintained that "she was wrongly convicted." Resp. Br. 44. But, also like the state court, the Commonwealth ignores substantial precedent holding that "an insistence on innocence does not by itself resolve whether a defendant would have taken a plea offer but for his counsel's error," and that

a petitioner's "insistence on innocence in his criminal proceedings after rejecting the plea offer is, at best, weakly probative." *Baker*, 109 F.4th at 202–03; *see also Kearn*, 90 F.4th at 1312 (the petitioner's "interest in proceeding to trial was rooted in misinformation gleaned from his counsel's faulty advice, making it an unreliable metric of reasonably probable outcomes" (quotation marks omitted)); *Smith*, 348 F.3d at 552 ("Protestations of innocence throughout trial are properly a factor in the trial court's analysis, however they do not, by themselves, justify summary denial of relief without an evidentiary hearing."). The Commonwealth cites no contrary authority.

The Commonwealth alternatively contends that Dillon will not be able to establish that the trial court would have accepted the plea bargain if presented. *See* Resp. Br. 41–46. Again, the state court did not deny relief on this basis, and there is accordingly no AEDPA deference. *See Grueninger*, 813 F.3d at 528. And the district court did not rule on this basis or make any factual findings, and so the Court's review is de novo.

The Supreme Court has articulated the standard for assessing whether there is a "reasonable probability" that the trial court would have accepted the plea offer:

> It can be assumed that in most jurisdictions prosecutors and judges are familiar with the boundaries of acceptable plea bargains and sentences. So in most instances it should not be

> difficult to make an objective assessment as to whether or not a particular fact or intervening circumstance would suffice, in the normal course, to cause prosecutorial withdrawal or judicial nonapproval of a plea bargain.

*Missouri v. Frye*, 566 U.S. 134, 149 (2012). The test therefore calls for an "objective assessment" of whether there is some "fact or intervening circumstance" that would "cause" the trial court to reject the plea. *Id.* In most cases, it is enough that there is "nothing to suggest that the government's offer would not have been approved by the court." *Mayhew*, 995 F.3d at 179 n.3; *see also Cooper v. United States*, 660 F. App'x 730, 737 (11th Cir. 2016) (vacating and remanding denial of habeas relief where "there is no indication that the court would not have accepted its terms"). The burden on the petitioner is simply to adduce evidence "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.[6]

The Commonwealth cannot point to any "fact or intervening circumstance" to suggest the trial court would not have accepted the plea offer. In fact, the Commonwealth's Office of the Attorney General has publicly stated that "rarely does a judge deem a Commonwealth's Attorney's proposed plea agreement to be so inappropriate that it should be rejected."

---

[6] The Commonwealth cites to *Anaya v. Lumpkin*, 976 F.3d 545 (5th Cir. 2020), *see* Resp. Br. 43–44, but that case arose under "the doubly deferential standard of § 2254(d)"—which does not apply here because the state court made no finding on this issue—and expressly declined to articulate the operative standard for prejudice, *see Anaya*, 976 F.3d at 556–57.

Commonwealth of Va., Off. of the Att'y Gen., *Investigative Report: Fairfax County Commonwealth's Attorney* 16 (Sept. 26, 2025), https://files.constantcontact.com/d3e83e11901/ef28d4a6-6b90-4907-b606-4e11d0bf8777.pdf?rdr=true.

The Commonwealth cites the trial court's comment at sentencing that the "magnitude" of Dillon's offense was "unique," Resp. Br. 43 (quotation marks omitted), but even assuming the trial court were inclined to impose *some* upward adjustment to the six-month guideline range, those comments come nowhere close to suggesting the court would have increased the guideline sentence by *sixty-fold*. *Cf. Alabama v. Smith*, 490 U.S. 794, 801 (1989) ("[T]he relevant sentencing information available to the judge after the plea will usually be considerably less than that available after a trial."). In any event, the judge who presided over the pretrial stage (and presumably would have reviewed any plea offer) was different from the judge who sentenced Dillon and made the cited comments. *Compare* JA420, *with* JA797.

The Commonwealth also cites *Laster v. Russell*, 743 S.E.2d 272 (Va. 2013), to argue that Dillon has not met her burden. *See* Resp. Br. 42–43. Setting aside that a state court decision does not bind the Court, the trial court there actually made a factual determination that the presiding judge likely would have rejected the plea offer, based on the fact that the court "was

very familiar with [the presiding judge] from having practiced together and having been on the same bench for almost ten years." *Laster*, 743 S.E.2d at 276–77. Here, though, there was no finding in the state trial court—or in *any* court—against Dillon on this issue. Again, the Commonwealth asks this Court to make factual findings, but that is not the role of an appellate court. *See Mayhew*, 995 F.3d at 179.

## CONCLUSION

For the foregoing reasons, Dillon respectfully requests that this Court vacate the district court's final order and remand.

*/s/ Joshua M. Wesneski*
Joshua M. Wesneski
*Counsel of Record*
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
(202) 682-7248
joshua.wesneski@weil.com

November 12, 2026

*Counsel for Petitioner-Appellant*
*Shebri Stacy Dillon*

## CERTIFICATE OF COMPLIANCE

The undersigned counsel of record certifies pursuant to Federal Rule of Appellate Procedure 32(g)(1) that the foregoing brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7) because, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f), this document contains 6,468 words.

This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in Century Schoolbook font in 14-point size.

*/s/ Joshua M. Wesneski*
Joshua M. Wesneski
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
(202) 682-7248
joshua.wesneski@weil.com

November 12, 2026

*Counsel for Petitioner-Appellant Shebri Stacy Dillon*